Michael **QUINTANILLA**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 04–99–00293–CR, 04–99–00294–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 24, 2001.

Richard E. Langlois, Law Offices of Richard E. Langlois, San Antonio, TX, for Appellant.

Carrie Moy, Assistant District Attorney, Jourdanton, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

STONE, Justice.

Michael Quintanilla appeals his convictions for murder and aggravated robbery alleging that he received multiple punishments for offenses against the same victim in the same criminal episode in violation of the double jeopardy prohibition, and that the trial court erred in excusing a juror. Finding no error, we affirm the trial court's judgments.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 1996, the owner and operator of C & J Icehouse, Louis John Vincik, was found shot to death in his store. After two years without leads, a confidential informant came forward with information that Rene Robles and "Mosca," a name appellant Quintanilla goes by, were responsible for the shooting. After being taken in for questioning, Quintanilla made a voluntary written statement following *Miranda* warnings, confessing that the shooting occurred during a botched robbery. Quintanilla testified at trial he did not intend to kill Vincik, but only to scare him off because Vincik was coming after him.

Although Quintanilla was indicted and tried for capital murder and aggravated robbery, he was convicted of the lesser offense of murder, with punishment assessed at ninety years confinement. The jury also convicted Quintanilla of aggravated robbery, for which he received a sentence of fifty years confinement. On appeal, Quintanilla claims his conviction and punishment for both murder and aggravated robbery violate the double jeopardy prohibition against multiple punishments for the same offense.

### DOUBLE JEOPARDY

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This provision is applicable to the states through the Fourteenth Amendment. *See Brown v. Ohio*, 432 U.S. 161, 164, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Article I, Section 14 of the Texas constitution pro-

vides much the same double jeopardy protections as the United States Constitution. *Stephens v. State*, 806 S.W.2d 812, 814 (Tex.Crim.App.1990). The double jeopardy clause embodies three essential guarantees: (1) it protects against a successive prosecution for the "same offense" after acquittal; (2) it protects against a successive prosecution for the "same offense" after conviction; and (3) it protects against multiple punishments for the "same offense." *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Iglehart v. State*, 837 S.W.2d 122, 126–27 (Tex.Crim.App.1992). This appeal concerns the third of these double jeopardy protections; that is, whether Quintanilla has received multiple punishments for the "same offense."

■■■ When multiple offenses are prosecuted in a single trial, as was done in the instant case, the double jeopardy clause prevents the sentencing court from prescribing greater punishment than the Legislature intended. *See Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Ervin v. State*, 991 S.W.2d 804, 807 (Tex.Crim.App.1999). When the same conduct violates more than one distinct penal statute and each statute requires proof of a fact that the other does not, it is presumed that the two offenses are not the same and that the Legislature intended to authorize multiple punishments. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Conversely, if all the elements of one statutory offense are contained within the other, it is presumed that the two offenses are the same and that the Legislature did not intend to authorize punishment for both. *Whalen v. United States*, 445 U.S. 684, 693–94, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

A review of the statutory elements of the offenses with which Quintanilla was charged reveals that aggravated robbery is a lesser included offense of capital murder, and thus the two offenses are the same for double jeopardy purposes. *Compare* TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon 1994) (capital murder) *with* TEX. PEN.CODE ANN. § 29.03 (Vernon 1994) (aggravated robbery). *See Parrish v. State*, 869 S.W.2d 352, 354 (Tex.Crim.App.1994) (greater inclusive and lesser included offenses are "same offenses" for double jeopardy purposes). In the instant case, however, Quintanilla was convicted of murder, not capital murder. Aggravated robbery is not a lesser included offense of murder, nor are the two offenses the "same offense" under *Blockburger*. *Compare* TEX. PEN.CODE ANN. § 19.02 (Vernon 1994) (murder) *with* TEX. PEN.CODE ANN. § 29.03 (Vernon 1994) ( aggravated robbery).

Nonetheless, Quintanilla contends the conviction at trial of the lesser offense of murder does not cure the error of multiple punishments for the same offense. He makes this claim based on his additional argument that the elements stated in the indictment control the analysis of double jeopardy issues. We reject Quintanilla's argument for several reasons. First, the argument completely ignores the jury's verdict. This argument asks us to declare a constitutional violation on what might have been, not on what actually took place. In effect, the argument places form—the wording of the indictment, over substance—the verdict of the jury. We are unwilling to review the indictment in a vacuum without reference to what the jury ultimately decided.

■■■ Second, we do not believe that the charging instrument is necessarily controlling when determining double jeopardy in the multiple punishments context. We recognize that various courts' construction of double jeopardy analysis is not uniform or entirely settled. *See Parrish v. State*,

869 S.W.2d at 354 (noting that "the core meaning of *Blockburger* is now evidently more in dispute than ever before"). While the charging instrument is relevant and controlling when addressing multiple prosecution claims, *State v. Perez*, 947 S.W.2d 268, 270 (Tex.Crim.App.1997), that is not the case in multiple punishment claims. The Court of Criminal Appeals has stated that the statutory elements, rather than the charging instrument elements, are relevant to a multiple punishments double jeopardy claim. As stated by the court:

> While *Parrish*, supra, does not make this distinction, it is logical to compare statutory elements in the multiple punishments context where *Blockburger* is a rule of statutory construction to be used in determining legislative intent, but compare charging instrument elements in the successive prosecutions context where there are two charging instruments to examine and where the underlying policy is to prevent retrying a defendant for something he has already been tried for.

*Id.* at 272. Indeed, in a recent decision in a multiple punishments double jeopardy claim, the Court of Criminal Appeals did not even mention the charging instrument. *See Ex Parte Hawkins*, 6 S.W.3d 554 (Tex. Crim.App.1999). Rather, the court focused on the statutory elements of the offenses and looked at other considerations to determine the legislative intent regarding punishment. This approach is appropriate since the paramount consideration in multiple punishment claims is whether the Legislature intended to permit such punishments. *See Ervin v. State*, 991 S.W.2d 804, 814 (Tex.Crim.App.1999). Review of a charging instrument drawn up by the prosecution does not shed light on whether the Legislature intended to permit multiple punishments. On the other hand, review of other factors is helpful in ascertaining legislative intent. For example, we consider whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether they are named similarly and have common punishment ranges, and whether the gravamen of the offenses is the same. *See Id.* (listing numerous considerations relevant to determining legislative intent regarding multiple punishments).[1]

When we consider these other factors, we find no indication that murder and aggravated robbery should be treated as the same offense for double jeopardy purposes. There is no indication that the Legislature has defined the offenses of aggravated assault and murder as the "same offense." *See Ex Parte Hawkins*, 6 S.W.3d at 556 (noting that the Legislature defines whether offenses are the same by prescribing the 'allowable unit of prosecution'). As noted above, a comparison of the statutory elements of murder and aggravated robbery reveals that the double jeopardy clause is not implicated because Quintanilla has not been twice punished for the "same offense." Accordingly, we overrule Quintanilla's first issue.

## EXCUSING JUROR KINZ

In his second and third issues, Quintanilla claims the trial court improper-

---

1. In support of his claim that the charging instrument controls our analysis, Quintanilla relies on *Queen v. State*, 940 S.W.2d 781 (Tex. App.—Austin 1997, pet ref'd), a multiple punishments case involving convictions for both capital murder and aggravated robbery. While the Austin court did refer to the indictment to determine the essential elements of the offenses, the *Queen* decision was issued prior to the Court of Criminal Appeals' opinion in *Perez*. At any rate, *Queen* is distinguishable because the defendant was actually convicted of the capital murder offense, whereas Quintanilla was convicted of the lesser offense of murder.

ly excused a juror, thereby denying him the right to a jury trial of twelve jurors. The excusing of jurors after the jury has been impaneled and sworn is a matter of trial court discretion, reviewed on appeal under an abuse of discretion standard. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim.App.1999), *cert. denied*, 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999). The evidence is viewed in the light most favorable to the trial court's ruling and almost complete deference is given to the trial court's findings of fact. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). However, the trial court's determination of the law and the application of the law to the facts is conducted *de novo*. *Id.*

All twelve jurors and one alternate were impaneled and sworn in on March 29, 1998. The following morning, prior to opening arguments, juror Gloria Kinz requested she be excused because her husband had become ill the evening before. She had taken him to the emergency room and was told to return him to the hospital that morning for additional testing. The judge then consulted the attorneys for the prosecution and the defendant; both agreed without objection that she should be released.

 The decision to excuse a juror is within the discretion of the trial court in conformity with article 36.29 of the Texas Code of Criminal Procedure. *Landrum v. State*, 788 S.W.2d 577, 579 (Tex.Crim.App. 1990); *Bass v. State*, 622 S.W.2d 101, 106–07 (Tex.Crim.App.1981). This discretion is limited under the statute to situations where there is a physical illness, mental condition, or emotional state which would interfere with one's ability to perform the duties of a juror. *Landrum* at 579; *Carrillo v. State*, 597 S.W.2d 769, 770–71 (Tex. Crim.App.1980).

In this case, the trial court was able to observe Kinz's attitude and demeanor, and

could reasonably have determined that Kinz was too distracted by her husband's need for medical care to effectively perform her obligations as a juror. Additionally, both attorneys were in agreement that she should be excused, and an alternate sworn juror was able to take her place prior to opening statements. The trial court did not abuse its discretion in excusing Kinz. Further, since a properly selected alternate juror replaced Kinz, Quintanilla was not deprived of a jury with twelve jurors. Issues two and three are overruled.

Finding no error, we affirm the judgments of the trial court.