TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00053-CR







Garland Scroggins, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT

NO. 3012305, HONORABLE BOB PERKINS, JUDGE PRESIDING






 Eleven jurors found appellant Garland Scroggins guilty of the offense of aggravated
assault with the use of a deadly weapon. See Tex. Pen. Code Ann. § 22.02(a)(2) (West 1994). The
indictment also alleged that appellant had four previous felony convictions, which the jury found 
to be true. The jury assessed punishment at life imprisonment in the Texas Department of Criminal
Justice, Institutional Division, and the trial court rendered judgment on the verdict. Appellant raises
three issues on appeal. First, appellant asks that his conviction be reversed because the district court
abused its discretion by dismissing a juror and allowing appellant to be convicted by eleven jurors. 
In his two remaining issues, appellant contends that the case should be remanded to the district court
for a new punishment hearing because the district court erred: (1) in admitting into evidence a pen
packet which contained no evidence that appellant had waived indictment leading to the conviction;
and (2) in admitting evidence of two previous felony convictions that were not "sufficiently linked"
to appellant. We will affirm the judgment of the district court.


BACKGROUND


 The State indicted appellant for aggravated assault, a second degree felony offense.
The guilt-innocence phase of the trial began on November 27, 2001. On that day, five of the State's
witnesses testified. By the next morning, the State had not yet concluded its case in chief. Before
the proceedings were under way, the district court reconvened outside the presence of the jury and
announced that one of the jurors (herein "Bull") had "called in sick" with the flu:


[F]irst his girlfriend called in and said that he had the flue (sic) and he wasn't going
to be able to be here. Then I had my court coordinator call his house and she spoke
with him. And he said that he had awakened at 4:00 or 4:30 this morning and--with
aching joints and also with 101 degree fever and he just started taking his flu
medicine and he's in bed right now. And his--he's got a sore throat. And so he says
he's--and he said he can go and get a doctor's letter if we need it.



The district court then expressed his belief that Bull was disabled, and that the trial would "proceed
with the balance of the jurors." 

 Appellant took the position that to proceed without the twelfth juror, there had to be
a disability based on "more of a showing than some guy calling saying he has the flu . . . ." The
district court acknowledged that one of the jurors had the previous day overheard Bull talking on his
cellular phone about "delivering a keg or getting a keg for last night or something." Nonetheless,
the district court concluded that, even if Bull had been drinking beer the night before, that fact does
not prove that he was not ill with influenza as he reported. The district court concluded that,
regardless of the reason, the juror had become disabled. Appellant objected to this determination,
and further objected on constitutional grounds that proceeding with a jury of eleven "dilutes the
State's burden of proof and that it's denying us due process . . . ." The district court overruled all
of appellant's objections and continued the guilt-innocence phase of the trial.

 After receiving further evidence from the State and from appellant, the jury found
appellant guilty of aggravated assault with the use of a deadly weapon. The punishment phase began
the next day. The indictment contained two enhancement paragraphs. The first alleged that
appellant had been convicted of the felony offenses of unauthorized use of a motor vehicle, see Tex.
Pen. Code Ann. § 31.07(a) (West 1994), and aggravated assault with serious bodily injury, see Tex.
Pen. Code Ann. § 22.02(a)(1) (West 1994). The second enhancement paragraph alleged that
appellant had been convicted of the offense of possession of a controlled substance, namely cocaine,
see Tex. Health & Safety Code Ann. § 481.112 (West Supp. 2001), and of the offense of attempted
murder, see generally Tex. Pen. Code Ann. § 15.01 (West 1994).

 Appellant was charged by information for the possession offense, a second degree
felony, and allegedly pleaded guilty to the charge. During the punishment phase below, appellant
objected to the admission of State's Exhibit Four, the pen packet for the possession conviction,
because it contained no signed waiver of indictment and there was no finding in the judgment that
appellant had waived indictment. The district court overruled this objection. After the State rested
on its punishment case, appellant moved to strike the exhibit "on that judgment where the
information is. I would like to further point out that the Court didn't have jurisdiction to enter that
judgment." The court overruled appellant's motion. 

 In relation to State's Exhibit Three, appellant objected to the admission of the
fingerprint cards contained in the pen packet relating to the convictions from the unauthorized use
of a motor vehicle and aggravated assault:


[T]hose fingerprint cards are just stuck in there and they don't refer--they don't say
where they came from, they don't hardly--they don't refer to cause numbers, they
don't refer to anything. They just say here. And I don't think that it's sufficient for
them to not tie them in to those what--they're alleging is prior convictions. And I
would object to the fingerprint cards being included.



The State responded that the fingerprint cards were part of the same pen packet, and that they
adequately connected appellant to the convictions. The district court overruled appellant's objection. 
After hearing evidence, the jury found all of the enhancement allegations to be true and assessed
punishment at imprisonment for life. This appeal followed.


DISCUSSION


Juror Disability

 In his first issue, appellant contends that the district court erred by determining that 
the juror was disabled and then allowing appellant to be convicted and punished by a jury consisting
of only eleven jurors. Appellant asks this Court to reverse the conviction because we cannot
determine beyond a reasonable doubt that the district court's constitutional error did not contribute
to the conviction and punishment. See Tex. R. App. P. 44.2(a); see also Rivera v. State, 12 S.W.3d
572, 579-80 (Tex. App.--San Antonio 2000, no pet.) (concluding that the right to a twelve member
jury is constitutional, therefore reversing because of appellate court's inability to "speculate as to
how a twelfth juror would have voted or how that juror would have otherwise influenced the jury's
verdict.").

 The Texas Constitution requires a jury in a felony criminal trial to be composed of
twelve members. Tex. Const. art. V, § 13. It further provides, however, that:

When, pending the trial of any case, one or more jurors not exceeding three, may die
or be disabled from sitting, the remainder of the jury shall have the power to render
the verdict; provided, that the Legislature may change or modify the rule authorizing
less than the whole number of the jury to render a verdict.



Id. Article 36.29 of the Texas Code of Criminal Procedure tracks the language of the Constitution
and provides that "after the trial of any felony case begins and a juror dies or, as determined by the
judge, becomes disabled from sitting at any time before the charge of the court is read to the jury,
the remainder of the jury shall have the power to render the verdict." Tex. Code Crim. Proc. Ann.
art. 36.29(a) (West Supp. 2003). Only one juror can be excused due to death or disability during the
pendency of a trial in a felony case. Id. A juror is disabled when the juror is physically, emotionally,
or mentally impaired in some way which hinders the juror's ability to perform the duty of a juror. 
Brooks v. State, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999), cert. denied, 528 U.S. 956 (1999). 
The determination as to whether a juror is disabled is within the discretion of the trial court. Id. 
Absent an abuse of that discretion, no reversible error will be found. Id.

 In a criminal case, an appellate court may reverse a trial court's decision for an abuse
of discretion only when it appears that the court applied an erroneous legal standard, or when no
reasonable view of the record could support the trial court's conclusion under the correct law and
the facts viewed in the light most favorable to its legal conclusion. Dubose v. State, 915 S.W.2d 493,
497-98 (Tex. Crim. App. 1996). Even if the appellate court would have reached a different result,
it should not intercede as long as the trial court's ruling was within the "zone of reasonable
disagreement." Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). 
The district court abuses its discretion when it arbitrarily or unreasonably excuses a juror, "without
reference to any guiding rules and principles." Gregg v. State, 881 S.W.2d 946, 950-51 (Tex.
App.--Corpus Christi 1994, pet. ref'd). 

 Appellant complains that the district court abused its discretion by "allowing the trial
to continue with only eleven jurors without confirmation that Juror Bull was, in fact, disabled." We
disagree. Although there must be some showing of illness or disability, the legal standard by which
a trial court determines that a juror has become disabled does not require that the trial court obtain
a particular type of reliable proof or independent verification of the disability. As this Court has
stated, "the Legislature intended that the decision to continue the trial before eleven jurors be a
matter resting in the sound discretion of the trial judge, as is his determination of whether a juror's
disability is sufficient to prevent his sitting in the case." Campbell v. State, 644 S.W.2d 154, 162
(Tex. App.--Austin 1982), pet. ref'd, 647 S.W.2d 660 (Tex. Crim. App. 1983) (per curiam). As the
State points out in its brief, the cases in which a juror has been determined disabled due to physical
impairment do not require "the trial court to obtain the opinion of a medical expert or any other
particular type of 'reliable proof' before determining that a juror is disabled."

 In Allen v. State, a case in which a doctor's note was offered into evidence, the trial
court's decision to excuse a juror "based on his condition and the physical well-being of the other
jurors" was held not an abuse of discretion "[u]nder the circumstances presented." 536 S.W.2d 364,
366-67 (Tex. Crim. App. 1976). In Hughes v. State, the trial court's conclusion that the juror was
disabled was "supported by the facts." 787 S.W.2d 193, 195 (Tex. App.--Corpus Christi 1990, pet.
ref'd). There, the trial court observed the juror's signs of illness while listening to a witness's
testimony--her eyes were closed, her head was propped up by her hand, and she looked as if she
were "in distress." Id. In Quintanilla v. State, the trial court's decision to excuse a juror on the
grounds that her husband had become ill the evening before was not an abuse of discretion because
"the trial court was able to observe [the juror's] attitude and demeanor, and could reasonably have
determined that [she] was too distracted by her husband's need for medical care to effectively
perform her obligations as a juror." 40 S.W.3d 576, 581 (Tex. App.--San Antonio 2001, pet. ref'd). In each of these cases, the appellate court was satisfied that the trial court excused the
juror based on some evidence, so that the determination of disability was not arbitrary or
unreasonable. Although the district court in this case did not obtain a doctor's verification of Bull's
illness or speak to or observe the juror, we cannot say that the district court made its decision
unreasonably and without some factual support. The district court directed the court coordinator to
call and speak directly with Bull, who described in detail his symptoms and ailments. (1) Bull told the
court coordinator that, if needed, he would obtain a doctor's note. Counsel for the State told the
district court that on the previous day Bull "twice put his head down on the . . . railing as if he was
not feeling well." The district court expressed concern for the other jurors and for judicial economy:
"Well, if he's got 101 fever, I don't want him down here to infect the other jurors. He says he's got
one. He's still at home . . . I'm not going to send a doctor out there to see if he's lying or not." 

 Appellant's arguments at trial and on appeal suggest that he believes that Bull was
simply physically ill from alcohol consumption and the fact that Bull did not first go to the doctor
and obtain a note proving the actual cause of his illness makes him an "irresponsible" juror. The
district court did not altogether discount the possibility that Bull's condition flowed from drinking
the night before, but stated nonetheless that although the court could not know "what he's disabled
from . . . I am convinced that he is disabled." The question on appeal is limited to whether the
district court had some guiding basis for determining that Bull's physical ailments met the statutory
requirement of "disability." Although the court could have reached a different conclusion, we hold
that the district court's ruling falls within the "zone of reasonable disagreement." Montgomery, 810
S.W.2d at 391. The district court's decision to continue the trial with eleven jurors because Bull
suffered from a physical illness that would hinder him from performing the duties of a juror did not
amount to an abuse of discretion. On the contrary, once the district court determined the juror was
disabled, it was required to continue the trial. See Hill v. State, No. 1385-01, slip op. at 13-14, 2002
Tex. Crim. App. LEXIS 213, at *19-20 (Tex. Crim. App. Nov. 6, 2002); Carrillo v. State, 597
S.W.2d 769, 771 (Tex. Crim. App. 1980). We overrule appellant's first issue. 


Waiver of Indictment

 Appellant contends in his second issue that the judgment for the second conviction
alleged for enhancement shows on its face that he had been charged only by information with the
felony of cocaine possession without showing that he had waived his right to indictment. (2) Therefore,
appellant maintains, the district court erred in admitting the pen packet and allowing the jury to find
that enhancement to be true. We disagree. It is true that the record must reflect a waiver of
indictment in order for a felony conviction to withstand an appellate challenge. See Lackey v. State,
574 S.W.2d 97, 100 (Tex. Crim. App. 1978). However, this rule applies only where the conviction
under attack is on direct appeal. See Acosta v. State, 650 S.W.2d 827, 828 (Tex. Crim. App. 1983). 
Here, appellant attempts a collateral attack on the judgment in a previous conviction, alleged for
enhancement, which cannot be raised for the first time in this appeal. Id. at 828-29.

 It is the State's burden to introduce properly authenticated copies of the defendant's
prior convictions for enhancement purposes. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West
Supp. 2003). There is no requirement that a judgment reflect the waiver of indictment if conviction
is upon information. Acosta, 650 S.W.2d at 828. As noted in Smith v. State, "although . . . the better
practice would have been for the State to have shown a waiver by appellant . . . such proof is not
required by the State, and no reversible error will result from a lack thereof." 683 S.W.2d 393, 406
(Tex. Crim. App. 1984). In this case, the State met its burden. Appellant's prior conviction used
for enhancement was sufficiently proven when the State introduced a properly certified pen packet
containing the judgment, the sentence, and fingerprints which were connected to appellant.

 In the context of a collateral attack on a prior conviction, once the State makes a
prima facie showing that the judgment and resulting sentence are regular on their faces, we presume
regularity in the judgment. See Johnson v. State, 725 S.W.2d 245, 247 (Tex. Crim. App. 1987); see
also Acosta, 650 S.W.2d at 833 (Onion, P.J., concurring) ("There is also a presumption of regularity
of the judgment.") Here, the presumption of regularity was further supported, to some degree, by
the fact that the pen packet reflects that appellant pleaded guilty to an information which stated that
"the defendant, Garland W. Scroggins, represented by counsel, voluntarily waived the right to be
accused by indictment of an offense other than a capital felony . . . ." The burden thus shifted to the
defendant to prove that the prior conviction is void. Acosta, 650 S.W.2d at 829; Smith, 683 S.W.2d
at 407. Appellant failed to introduce any evidence or make an affirmative showing that the prior
conviction was void. Accordingly, we hold that the district court properly overruled appellant's
objection and motion to strike and therefore overrule appellant's second issue. 


Fingerprint Cards

 In his third issue, appellant complains that the district court "erred in admitting
irrelevant evidence of two felony convictions" which "were not sufficiently linked" to him. He
argues that the unattached fingerprint cards "did not contain information as to where the card came
from and did not list cause numbers to connect the fingerprints to the causes in the [pen] packet,"
and, therefore, there was insufficient evidence to link him to the convictions for unauthorized use
of a motor vehicle and aggravated assault. A trial court's decision to admit evidence is reviewed
under an abuse of discretion standard, and we will not reverse the district court's ruling unless we
determine it falls outside the zone of reasonable disagreement. See Torres v. State, 71 S.W.3d 758,
760 (Tex. Crim. App. 2002). 

 The State has the burden of proof beyond a reasonable doubt to show the prior
convictions were final under the law and that appellant was the person previously convicted of those
offenses. See Wilson v. State, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); see also Rios v. State,
557 S.W.2d 87, 92 (Tex. Crim. App. 1977). The court of criminal appeals has held that there is no
exclusive manner of proving a defendant's identity as to prior felonies used for enhancement, and
that each case is to be judged on its own individual merits. Littles v. State, 726 S.W.2d 26, 32 (Tex.
Crim. App. 1987) (op. on reh'g). One means of proving identity for purposes of enhancement
includes the introduction of certified copies of the judgment, sentence, and record of the Texas
Department of Corrections or a county jail, including fingerprint records of the person convicted,
supported by expert testimony identifying them as identical with known prints of the accused. Id.
at 31. Here, in order to meet its burden of identifying appellant as the same person who had been
previously convicted in the pen packet labeled Exhibit Three, the State used the orthodox method
of offering the testimony of a fingerprint specialist who compared and identified the prints in the
unattached fingerprint cards with appellant's known prints. (3) 

 Appellant objected to the admission of the pen packet because the fingerprint cards
were not "attached" and were "just stuck in there." Appellant therefore directed his trial objection
toward the conditional relevance of the pen packet. See Rosales v. State, 867 S.W.2d 70, 72 (Tex.
App.--El Paso 1993, no pet.) (stating that question of whether prior conviction has been sufficiently
linked to defendant is procedural and primarily one of conditional relevancy). When an
authenticated copy of a pen packet is offered into evidence in an effort to prove a prior conviction,
however, it is not essential that the supporting evidence as to identification precede its admission. 
Yeager v. State, 737 S.W.2d 948, 951 (Tex. App.--Fort Worth 1987, no pet.) (citing Beck v. State,
719 S.W.2d 205, 210 (Tex. Crim. App. 1986)). Appellant does not direct us to any supporting
authority for his contention, nor can we find any support for the proposition that the fingerprint card
must be stapled or otherwise attached to documents in the pen packet in order to be admissible. 
Thus, we cannot say that the district court abused its discretion in admitting the pen packet with
unattached fingerprint cards, which was conditionally relevant at the time. See Torres, 71 S.W.3d
at 760. 

 Furthermore, penitentiary documents are self-proving; thus, no sponsoring witness
was needed as to the fingerprint cards because the proper attestation and certificate are attached to
the judgment and sentence relating to appellant's prior conviction. See Yeager, 737 S.W.2d at 950. 
If, after all proof on the fact in question has been received, the evidence does not support a rational
finding that the defendant is the same person as the one previously convicted, the fact finder should
not be allowed to consider evidence of the previous conviction. See Rosales, 867 S.W.2d at 73
(citing Fuller v. State, 829 S.W.2d 191, 197 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 941
(1993)). In that situation, a motion to strike must be urged and granted to withdraw the evidence
from consideration. Id. Otherwise, any objection to the evidence is waived. See Fuller, 829 S.W.2d
at 198-99. Here, the relevance of the pen packet was conditioned upon the introduction of evidence
sufficient to support a finding that appellant is the same person as the one previously convicted. See
Beck, 719 S.W.2d at 210-11. After all the evidence was admitted, appellant never moved to strike
the exhibit. The State argues that appellant thereby waived this complaint. We agree. 

 In any event, although appellant never moved to strike the pen packet due to the loose
fingerprint cards, even if the fingerprint evidence was deficient, the entire pen packet would not
thereby become inadmissible. See Pachecano v. State, 881 S.W.2d 537, 545 (Tex. App.--Fort
Worth 1994, no pet.). The remainder of the pen packet sufficiently identifies appellant as the person
previously convicted of the felony offenses. In addition to the testimony of the fingerprint expert,
the pen packet contained photographs of the person convicted and was passed around for the jury
members to see and examine. The pen packet that appellant claims is insufficiently linked to him
contains two photos of a person named Garland W. Scroggins. Thus, even if the person convicted
in State's Exhibit Three was not proven to be appellant through the use of fingerprints, because the
person convicted in State's Exhibit Four was proven to be appellant through the use of fingerprints,
the jury had the capability to compare the photographs contained in the two exhibits and reach the
conclusion that the photographs depicted the individual on trial, the appellant. See Littles v. State,
726 S.W.2d 26, 31 (Tex. Crim. App. 1987) (op. on reh'g). We overrule appellant's third issue.


CONCLUSION


 Because we overrule all of appellant's issues, we affirm the judgment of the district
court.



 __________________________________________

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Affirmed

Filed: December 5, 2002

Do Not Publish
1. The State's brief correctly observes that "appellant did not, in any way, specifically object
on the basis that the juror did not communicate directly with the judge. Nor does the appellant
expressly make that argument in his brief." 
2. Appellant correctly states that in Texas, a felony conviction cannot be had on information
in the absence of a waiver. Article 1, section 10 of the Texas Constitution states in part that "no
person shall be held to answer for a criminal offense, unless on an indictment of a grand jury . . . ." 
Tex. Const. art. I, § 10; see also Tex. Code Crim. Proc. Ann. art. 1.05 (West 1977). Article 1.141
of the Code of Criminal Procedure provides: "A person represented by legal counsel may in open
court or by written instrument voluntarily waive the right to be accused by indictment of any offense
other than a capital felony. On waiver as provided in this article, the accused shall be charged by
information." Tex. Code Crim. Proc. Ann. art. 1.141 (West 1977). 
3. The State called fingerprint specialist, Manuel Villanueva, whose testimony in part was as
follows:


Q: Now, again showing you State's Exhibit No. 5 that you identified as the
fingerprint card taken from the defendant, did you do a comparison with that
fingerprint card, the known prints of the defendant against the fingerprints
located in State's Exhibit No. 3 and State's Exhibit No. 4?



 At the request of the prosecutor, I compared the known prints of the
defendant to the prints of the defendant to the prints on this pen pack. You
can see by my signature here and here that I looked at both of them. And
after thorough examination, I determined they're both one and the same.




 And did you also do the same for State's Exhibit No. 3?




 Again, the prints--the known prints are compared to these prints here. And
you can see by my initials that I've looked at both of them. And after a
thorough examination, I determined they were both one and the same.