IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00279-CR

 

Larry Glen Brown,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 361st District
Court

Brazos County, Texas

Trial Court No. 06-06486-CRF-361

 



MEMORANDUM  Opinion



 

            A jury convicted Larry Glen
Brown of the lesser-included offense of manslaughter and assessed his
punishment at twenty years’ imprisonment and a $5,000 fine.  Brown raises eight
points on appeal.  We will affirm.

Background

            Brown was indicted for the
murder of Christopher Johnson who was fatally shot during a melee at a Bryan
nightclub.  Several witnesses testified that they saw Brown with a gun at the
club and heard shots fired.  One testified that Brown shot Johnson.  Brown
testified that he fired shots in the air and the crowd cleared the area.  Then
he heard shots coming from a fence at the side of the club property and fired
“blindly” in that direction.  The court denied his requested instructions for
self-defense, voluntary intoxication, and the lesser-included offense of criminally
negligent homicide.

Self-Defense

            Brown contends in his second
point that the court erred by failing to charge the jury on self-defense.[1]

            A defendant is “entitled to
an instruction on every defensive issue raised by the evidence, ‘whether that
evidence is weak or strong, unimpeached or uncontradicted, and regardless of
what the trial court may or may not think about the credibility of the defense.’” 
Allen v. State, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008) (quoting Hamel
v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)).

            Under the law in effect at
the time of the offense, section 9.32 of the Penal Code provided in pertinent
part that a person was justified in using deadly force in self-defense “when and
to the degree he reasonably believes the deadly force is immediately necessary to
protect himself against the other’s use or attempted use of unlawful deadly
force.”  Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec.
9.32(3)(A), 1993 Tex. Gen. Laws 3586, 3598 (amended 2007) (current version at Tex. Pen. Code Ann. § 9.32(a)(2)(A)
(Vernon Supp. 2009)).

            Section[2]
9.05 also applies.  It provides:

            Even though an actor is
justified under this chapter in threatening or using force or deadly force
against another, if in doing so he also recklessly injures or kills an innocent
third person, the justification afforded by this chapter is unavailable in a
prosecution for the reckless injury or killing of the innocent third person.

 

Tex. Pen. Code
Ann. § 9.05 (Vernon 2003).

            There is no evidence in the
record that Johnson used or exhibited deadly force during the altercation which
led to the fatal shooting.  Therefore, to the extent Brown’s request for a
self-defense instruction was premised on any perceived threat from Johnson,
such an instruction was not authorized under the law.  See Act of May
29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 9.32(3)(A); Ruiz v. State,
No. 05-06-00415-CR, 2007 Tex. App. LEXIS 596, at *6 (Tex. App.—Dallas Jan. 29, 2007,
pet. dism’d, untimely filed) (not designated for publication); Starks v.
State, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet.
dism’d, untimely filed).

            Brown also testified that he
fired his handgun in response to shots being fired from a fence at the side of
the club.  However, section 9.05 precludes the submission of a self-defense
instruction if the defendant recklessly kills an innocent third person while
using deadly force in response to a threat from someone else.  See Tex. Pen. Code Ann. § 9.05; Villareal
v. State, No. 02-05-00380-CR, 2007 Tex. App. LEXIS 3831, at *7 (Tex.
App.—Fort Worth May 17, 2007, pet. ref’d) (not designated for publication); Thomas
v. State, No. 05-96-01469-CR, 1998 Tex. App. LEXIS 5525, at *10-11 (Tex.
App.—Dallas Aug. 31, 1998, pet. ref’d) (not designated for publication); Banks
v. State, 955 S.W.2d 116, 118-19 (Tex. App.—Fort Worth 1997, no pet.). 
Therefore, to the extent Brown’s request for a self-defense instruction was
premised on the perceived threat from an unidentified shooter, he was not
entitled to such an instruction with respect to the shooting of Johnson who,
under these circumstances, would be an innocent third party.

            Brown’s second point is
overruled.

Sufficiency of the Evidence

            Brown contends in his
seventh and eighth points respectively that the evidence is legally and
factually insufficient to establish that he fired the fatal shot or to support
the rejection of his self-defense claim under a hypothetically correct jury
charge.

            In reviewing a claim of
legal insufficiency, we view all of the evidence in a light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential element beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Sells v.
State, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003); Witt v. State,
237 S.W.3d 394, 396-97 (Tex. App.—Waco 2007, pet. ref’d).

            In
a factual insufficiency review, we ask whether a neutral review of all the
evidence, though legally sufficient, demonstrates either that the proof of
guilt is so weak or that conflicting evidence is so strong as to render the
factfinder’s verdict clearly wrong and manifestly unjust.  Watson v. State,
204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Witt, 237 S.W.3d at 397.

            Dmarcus
Thurman testified that he saw Brown “literally shoot Chris Johnson point blank
right to the back.”  Other witnesses testified that they saw Brown brandishing
a gun and heard gunshots as they ran or took cover.  This constitutes legally
sufficient evidence that Brown fired the fatal shot.

            Regarding
factual sufficiency, Brown testified that shots were fired by others at the
premises.  Investigators found shell casings from other weapons on the
premises.  Results of testing on the bullet removed from Johnson’s body were
not available at trial, so it was not shown to be a 9 millimeter bullet.

            There
was conflicting evidence about whether Brown fired the fatal shot.  It was
within the jury’s province to resolve those conflicts.  Dudzik v. State,
276 S.W.3d 554, 559 (Tex. App.—Waco 2008, pet. ref’d).  By returning a verdict
of guilty, the jury necessarily resolved those conflicts in favor of the
State.  Giving due deference to the jury’s role as the factfinder, we will not
disturb its finding.  See id.  Accordingly, we find that the evidence
was factually sufficient to support a finding that Brown fired the fatal shot.

            With
regard to self-defense, we have already determined that Brown was not entitled
to an instruction on self-defense.

            Brown’s
seventh and eighth points are overruled.

Photographs

            Brown
contends in his sixth point that the court abused its discretion by admitting
twelve autopsy photographs because the probative value of the photographs was
substantially outweighed by the danger of unfair prejudice.

[A] proper Rule 403
analysis by either the trial court or a reviewing court includes, but is not
limited to, the following factors: (1) the probative value of the evidence; (2)
the potential to impress the jury in some irrational, yet indelible, way; (3)
the time needed to develop the evidence; (4) the proponent's need for the
evidence.  In the context of the admission of photographs, we also consider the
factors set out in Narvaiz.  Those factors include the number of
photographs, the size, whether they are in color or are black and white,
whether they are gruesome, whether any bodies are clothed or naked, and whether
the body has been altered by autopsy.

 

Erazo
v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004) (citing Narvaiz
v. State, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992); Montgomery v.
State, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh’g))
(footnotes omitted).  “The availability of other means of proof and the
circumstances unique to each individual case must also be considered.”  Gallo
v. State, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).

            The
twelve photographs at issue are eight-by-ten color photographs admitted at
trial as State’s Exhibits 101 through 112.  The first two depict where the
bullet was lodged in Johnson’s internal stomach wall.  The remaining ten depict
his intestines, his bladder, the inferior vena cava, the aorta, and the left
iliac region.  After Brown objected to their admission, the State explained
that these photographs were necessary to depict the path the bullet traveled
within Johnson’s body and to counter Brown’s anticipated argument that
Johnson’s death was due at least in part to his own intoxication.[3] 
Brown’s counsel responded that he did not intend to challenge the autopsy
findings.  He took the medical examiner on voir dire and established that it
would be possible to explain to the jury the bullet path and the damage done to
Johnson’s internal organs without using the photographs.  The court overruled
the objection.

Probative
Value

            These
photographs have at best limited probative value.  See Reese v. State,
33 S.W.3d 238, 241-42 (Tex. Crim. App. 2000) (“For the sake of argument, we
will assume that the probative value weighs in favor of the State.”); Kelley
v. State, 22 S.W.3d 642, 645 (Tex. App.—Waco 2000, pet. ref’d) (“[W]e see
very little probative value in photographs which depict the victim’s condition
after life-saving measures had been attempted.  The amount of blood surrounding
the body at the hospital and the manner in which miscellaneous medical
equipment was used to save Ramirez have no tendency to prove or disprove
whether Ramirez was shot (which was undisputed) or, more importantly, whether
he was shot in self-defense.”).

            Brown
did not dispute that Johnson died from a gunshot wound or the path the bullet
traveled.  Nor does Brown dispute that Johnson suffered “a large amount of
blood loss” as the medical examiner stated.  To the extent Brown’s counsel
suggested that Johnson may have survived absent his preexisting condition, the
evidence is at best marginally relevant.  This factor weighs only slightly in
favor of admissibility.

Ability
to Impress Jury in Irrational Manner

            The
nature of the photographs themselves is relevant to this issue.  See Erazo,
144 S.W.3d at 494-95; Reese, 33 S.W.3d at 242.  The twelve photographs
are highly detailed color photographs.  Each focuses on a particular aspect of
Johnson’s internal injuries.  It is not difficult to conclude that these grisly
depictions of Johnson’s internal injuries had an emotional impact on the jurors
and may have distracted them from the issues at hand.  Id.; see
Kelley, 22 S.W.3d at 645.  This factor weighs strongly in favor of
exclusion.

Time
Needed to Develop Evidence

            This
factor weighs in favor of admissibility.  The State did not devote an
inordinate amount of the medical examiner’s testimony to admit and discuss
these photographs.

The
State’s Need for This Evidence

            There are
three questions that the reviewing court should answer when addressing this
factor: “Does the proponent have other available evidence to establish the fact
of consequence that the [photograph] is relevant to show?  If so, how strong is
that other evidence?  And is the fact of consequence related to an issue that
is in dispute?”

 

Erazo, 144
S.W.3d at 495-96 (quoting Montgomery, 810 S.W.2d at 390).

            The
medical examiner’s testimony (without these photographs) provided more than
“[a]mple and adequate evidence” of the relevant issue, namely, the cause of
death.  See Erazo, 144 S.W.3d at 496.  And Brown did not dispute the
cause of death.  This factor weighs in favor of exclusion.

Summary

            Having
considered the relevant factors, we hold that the probative value of these
photographs was substantially outweighed by the danger of unfair prejudice.  See
id.; Reese,
33 S.W.3d at 242-43; Kelley, 22 S.W.3d at 645.  Thus, the court abused
its discretion by admitting them.

Harm
Analysis

            This
is non-constitutional error, and we assess harm under Rule 44.2(b).  See
Tex. R. App. P. 44.2(b); Reese,
33 S.W.3d at 243; Kelley, 22 S.W.3d at 645.  Rule 44.2(b) requires
reversal if the error affected the defendant’s substantial rights.  Tex. R. App. P. 44.2(b).

  A substantial right
is affected when the error had a substantial and injurious effect or influence
in determining the jury’s verdict.  In assessing the likelihood that the jury’s
decision was adversely affected by the error, an appellate court should
consider everything in the record, including any testimony or physical evidence
admitted for the jury’s consideration, the nature of the evidence supporting
the verdict, the character of the alleged error and how it might be considered
in connection with other evidence in the case.  The reviewing court may also
consider the jury instructions, the State’s theory and any defensive theories,
closing arguments, voir dire and whether the State emphasized the error.

 

 Haley v. State, 173
S.W.3d 510, 518 (Tex. Crim. App. 2005) (footnotes omitted).

            Here,
we are not persuaded that the error in admitting these photographs affected Brown’s
substantial rights.  Little attention was devoted to these exhibits after they
were admitted in evidence.  Brown focuses solely on the length of his sentence
as indicating that he was harmed.[4] 
We disagree.  The parties did not refer to the photographs during the
punishment phase, which was fairly brief.  The parties stipulated to Brown’s
prior convictions, and the State called two witnesses who testified about
extraneous offenses Brown had been involved in.  The punishment argument
focused primarily on Brown’s family situation, his upbringing, and his criminal
activities both before and after Johnson’s death.

            Having
considered the entire record, we hold that the erroneous admission of the
photographs did not have a substantial and injurious effect or influence on the
jury’s verdict during either phase of trial.  See Petruccelli v. State,
174 S.W.3d 761, 769 (Tex. App.—Waco 2005, pet. ref’d).  Brown’s sixth point is
overruled.

Excused
Juror

            Brown
contends in his first point that the court abused its discretion by declaring a
juror disabled and replacing him with an alternate juror on the second day of
trial.

            If
“a juror dies or, as determined by the judge, becomes disabled from sitting”
during a felony trial before the charge has been read to the jury, then the
trial may proceed to verdict without that juror.  Tex. Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp. 2009).
 A juror is considered “disabled” if he has a “physical illness, mental
condition, or emotional state” which hinders his ability to perform his duties
as a juror.   Hill v. State, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002)
(quoting Landrum v. State, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990)). 
A juror may also be considered “disabled” if he has “any condition that
inhibits [him] from fully and fairly performing the functions of a juror.”  Routier
v. State, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003) (quoting Reyes v.
State, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000)).  We review a trial
court’s determination that a juror is disabled under an abuse-of-discretion
standard.  Id.

            Here,
the court coordinator testified about the juror’s situation.  His wife had had
surgery the night before and was due to be released in a day or two.  He would
be unable to serve as a juror because he was the only one available to care for
her when she was released.  Under questioning by Brown’s counsel, the court
coordinator testified that she did not know whether they had other family
members in town or whether they had explored the possibility of hiring a nurse
to provide in-home care.

            Under
similar circumstances, the San Antonio Court has held that a trial court did
not abuse its discretion by excusing a juror whose husband became unexpectedly
ill the night of the first day of trial, was taken to the emergency room, and
had to be returned to the hospital the next morning for additional tests.  See
Quintanilla v. State, 40 S.W.3d 576, 581 (Tex. App.—San Antonio 2001, pet.
ref’d).  However, Quintanilla is somewhat different because the
defendant “agreed without objection” to the juror’s being excused and the trial
court had the opportunity to observe the juror’s “attitude and demeanor and
could reasonably have determined that [she] was too distracted by her husband’s
need for medical care to effectively perform her obligations as a juror.”  Id.

            Courts
have likewise found parents to be “disabled” for purposes of article 36.29 when
they had children at home who would otherwise be unattended if they served.  See
Owens v. State, 202 S.W.3d 276, 277 (Tex. App.—Amarillo 2006, no pet.); Wiley
v. State, No. 03-99-00047-CR, 2000 Tex. App. LEXIS 1565, at *43-45 (Tex.
App.—Austin Mar. 9, 2000), vacated on other grounds, No. 732-00 (Tex.
Crim. App. June 28, 2000) (not designated for publication); Edwards v. State,
981 S.W.2d 359, 367 (Tex. App.—Texarkana 1998, no pet.).

            The
situation facing this juror was no different.  The information before the court
was that his wife was hospitalized, would be released before the end of trial,
and would require his care because no one else was available.  We decline to
require a trial court to explore the availability of home health services for
this kind of situation as suggested by Brown’s trial counsel.  The court did
not abuse its discretion by declaring this juror disabled.

            Brown’s
first point is overruled.

Lesser-Included Offense

            Brown contends in his fourth
point that the court erred by failing to instruct the jury on the
lesser-included offense of criminally negligent homicide.

            We use a two-part test to
determine whether a defendant is entitled to such an instruction.  “First, the
lesser-included offense must be included within the proof necessary to
establish the offense charged; second, there must be some evidence in the
record that if the defendant is guilty, he is guilty only of the
lesser-included offense.”  Young v. State, 283 S.W.3d 854, 875 (Tex.
Crim. App. 2009).

            The first part of the test
is met because criminally-negligent homicide is a lesser-included offense of
murder.  Pierce v. State, 234 S.W.3d 265, 270 (Tex. App.—Waco 2007, pet.
ref’d).  However, there must also be evidence in the record that Brown was
guilty of only this lesser offense.  See Young, 283 S.W.3d at 875.  The
issue, then, is whether there is evidence that Brown failed to perceive the
risk created by his conduct (i.e., acted with criminal negligence).  See
Tex. Pen. Code Ann. § 6.03(d)
(Vernon 2003); Jackson v. State, 248 S.W.3d 369, 371 (Tex. App.—Houston
[1st Dist.] 2007, pet. ref’d); Nguyen v. State, 977 S.W.2d 450, 456 (Tex.
App.—Austin 1998), aff’d, 1 S.W.3d 694 (Tex. Crim. App. 1999).

            Brown testified that he kept
his 9 millimeter handgun with him at all times for protection and had been
carrying a gun since he was seventeen or eighteen.  Chris Huckaby and he rode
to the club together.  In the club parking lot, Brown paid Chavez Webber $150
or $200 for some marihuana and let Webber hold his gun because he was
interested in buying it.  Webber walked away, and Brown asked him to return the
gun.  Then Webber and Huckaby got into an argument about money Huckaby
allegedly owed Webber for drugs.  The two of them started fighting, and a crowd
gathered.  Brown joined the fray to help Huckaby.  The victim Johnson
momentarily broke up the fight.

            Webber and Huckaby quickly
resumed their argument, and Brown was trying to find his gun.  They began
fighting again, and, as Huckaby was “getting the best” of Webber, Johnson
intervened.  Brown testified that he was scared and confused at this moment
because it was “basically [he] and Huckaby versus everybody else.”  A large
crowd surrounded them, yelling and throwing bottles.  Brown was on the ground
at this point being “stomped or kicked” when he suddenly saw his gun on the
ground.  He grabbed the gun to protect himself.  He shot it twice in the air
“to get the crowd from up off of us, keep them from beating us up.”

            The crowd scattered and then
“people just started shooting from everywhere.”  Brown focused on gunshots
being fired from near a fence on the side of the club.  He closed his eyes and
fired one shot in that direction, believing that the crowd had gotten out of
the way by then.  He explained that he fired this shot to protect himself from
whoever was shooting at him.

            From Brown’s own testimony,
we conclude that no rational trier of fact would have been able to find that he
failed to perceive the risk created by his conduct.  Brown always carried a gun
and so was familiar with the risk associated with its use.  He brandished the
gun in the midst of a heated fray.  He intentionally fired it in the air for
protection and to move the crowd away.  He intentionally fired it toward the
fence for protection against the person shooting at him.  Under this record,
the court did not err by refusing to charge the jury on the lesser-included
offense of criminally negligent homicide.  See Jackson, 248 S.W.3d at
373; Trujillo v. State, 227 S.W.3d 164, 168-69 (Tex. App.—Houston [1st
Dist.] 2006, no pet.); Nguyen, 977 S.W.2d at 457; Johnson v. State,
915 S.W.2d 653, 658 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d).

            Brown’s
fourth point is overruled.

Argument
Regarding Self-Defense








            Brown contends in his third point that
the court erred by overruling his objection to the State’s comment in closing
argument that the judge had determined that self-defense did not apply in this
case.

            The prosecutor referred to
the discussion of self-defense during voir dire, noted that the charge did not
mention self-defense, and speaking about the charge stated:

This is the law.  What was discussed in
voir dire, what Mr. Barron told you in opening is not the law in this case. 
The judge has made the determination on what the law is in this case. 
Self-defense is not here because he was not justified in the actions that he
took.

 

            One of the acceptable areas
of closing argument is responding to the argument of opposing counsel.  Brown
v. State, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).  Even though the
trial court refused Brown’s request for an instruction on self-defense, his
counsel still raised the issue in his argument—“So he gets the gun while he’s
on his knees.  Instead of firing into the crowd, which I assert under the law
of self-defense he had a right to do.  .  .  .  He shoots twice in the air  . 
.  .  .”  

            The court sustained the
State’s objection to this argument.  Nevertheless, we cannot say that the court
abused its discretion by permitting the State to discuss self-defense in its
argument under these circumstances.

            Brown’s third point is
overruled.

Voluntary Intoxication

            Brown contends in his fifth
point that the court erred by instructing the jury in the charge that voluntary
intoxication is no defense.

            Section 8.04(a) provides, “Voluntary
intoxication does not constitute a defense to the commission of crime.”  Tex. Pen. Code Ann. § 8.04(a) (Vernon
2003).  Subsection (d) of the same statute further provides, “For purposes of
this section ‘intoxication’ means disturbance of mental or physical capacity
resulting from the introduction of any substance into the body.”  Id. § 8.04(d) (Vernon 2003).

            Emerson Ayers testified that
Brown went into the club about 11:00 that night and came out around 2:30 or
3:00 in the morning.  He said that Brown was “drunk” when he emerged from the
club, that “he couldn’t even walk straight,” and Ayers could tell “he wasn’t
sober anymore” because of the way he was talking.  Brown himself admitted to
having some drinks.

The evidence did not establish
unequivocally that Appellant was intoxicated the day of the [homicide].  But
there was sufficient evidence from which a juror could conclude that
intoxication somehow excused Appellant’s actions.  By instructing the jury that
voluntary intoxication does not constitute a defense to [homicide], the trial
judge properly utilized the charge’s function to actively prevent confusion. 
Therefore, the inclusion of the contested instruction did not constitute
error.   

 

Sakil v. State, 287 S.W.3d 23, 27-28 (Tex. Crim. App.
2009).

            Brown’s fifth point is
overruled.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief Justice Gray concurs in the
judgment only to the extent it affirms the trial court’s judgment.  He does not
join the Court’s opinion.  A separate opinion will not issue.)

Affirmed

Opinion
delivered and filed January 13, 2010

Do not publish

[CR25]









[1]               We address Brown’s
self-defense complaint before addressing his legal insufficiency claim because this
issue impacts the form of the hypothetically correct jury charge under which we
analyze the sufficiency of the evidence.  See Villarreal v. State, 286
S.W.3d 321, 327 (Tex. Crim. App. 2009) (appellate court measures sufficiency of
evidence according to hypothetically correct jury charge). 





[2]
              Henceforth, the term
“section” refers to a section of the Penal Code unless otherwise indicated.





[3]
              Brown’s counsel mentioned
in his opening statement that Johnson’s “blood alcohol level was about three
times the legal limit.”  During his cross-examination of the medical examiner,
he elicited testimony that Johnson’s blood-alcohol level was 0.22 grams per
milliliter.  The medical examiner explained that Johnson had an enlarged liver
(hepatomegaly) most likely due to alcohol abuse, that this condition made him
more susceptible to bleeding, and that this was a contributing factor to his
death.  However, Brown’s counsel never disputed that the gunshot wound was the
cause of death.





[4]
              We infer from this
that Brown concedes that the erroneous admission of the photographs did not
have a substantial affect on the jury’s verdict of guilt.  In any event, we
have little difficulty concluding that their admission did not have “a
substantial and injurious effect or influence” on the jury’s verdict during the
guilt-innocence phase.