

# IN THE
## TENTH COURT OF APPEALS

### No. 10-07-00279-CR

**LARRY GLEN BROWN,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 361st District Court
Brazos County, Texas
Trial Court No. 06-06486-CRF-361**

## MEMORANDUM OPINION

A jury convicted Larry Glen Brown of the lesser-included offense of manslaughter and assessed his punishment at twenty years' imprisonment and a $5,000 fine. Brown raises eight points on appeal. We will affirm.

### Background

Brown was indicted for the murder of Christopher Johnson who was fatally shot during a melee at a Bryan nightclub. Several witnesses testified that they saw Brown with a gun at the club and heard shots fired. One testified that Brown shot Johnson.

Brown testified that he fired shots in the air and the crowd cleared the area. Then he heard shots coming from a fence at the side of the club property and fired "blindly" in that direction. The court denied his requested instructions for self-defense, voluntary intoxication, and the lesser-included offense of criminally negligent homicide.

## Self-Defense

Brown contends in his second point that the court erred by failing to charge the jury on self-defense.[1]

A defendant is "entitled to an instruction on every defensive issue raised by the evidence, 'whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of what the trial court may or may not think about the credibility of the defense.'" *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008) (quoting *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)).

Under the law in effect at the time of the offense, section 9.32 of the Penal Code provided in pertinent part that a person was justified in using deadly force in self-defense "when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force." Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 9.32(3)(A), 1993 Tex. Gen. Laws 3586, 3598 (amended 2007) (current version at TEX. PEN. CODE ANN. § 9.32(a)(2)(A) (Vernon Supp. 2009)).

Section[2] 9.05 also applies. It provides:

---

[1]     We address Brown's self-defense complaint before addressing his legal insufficiency claim because this issue impacts the form of the hypothetically correct jury charge under which we analyze the sufficiency of the evidence. *See Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (appellate court measures sufficiency of evidence according to hypothetically correct jury charge).

Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

TEX. PEN. CODE ANN. § 9.05 (Vernon 2003).

There is no evidence in the record that Johnson used or exhibited deadly force during the altercation which led to the fatal shooting. Therefore, to the extent Brown's request for a self-defense instruction was premised on any perceived threat from Johnson, such an instruction was not authorized under the law. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 9.32(3)(A); *Ruiz v. State*, No. 05-06-00415-CR, 2007 Tex. App. LEXIS 596, at *6 (Tex. App.—Dallas Jan. 29, 2007, pet. dism'd, untimely filed) (not designated for publication); *Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd, untimely filed).

Brown also testified that he fired his handgun in response to shots being fired from a fence at the side of the club. However, section 9.05 precludes the submission of a self-defense instruction if the defendant recklessly kills an innocent third person while using deadly force in response to a threat from someone else. *See* TEX. PEN. CODE ANN. § 9.05; *Villareal v. State*, No. 02-05-00380-CR, 2007 Tex. App. LEXIS 3831, at *7 (Tex. App.—Fort Worth May 17, 2007, pet. ref'd) (not designated for publication); *Thomas v. State*, No. 05-96-01469-CR, 1998 Tex. App. LEXIS 5525, at *10-11 (Tex. App.—Dallas Aug. 31, 1998, pet. ref'd) (not designated for publication); *Banks v. State*, 955 S.W.2d 116, 118-19 (Tex. App.—Fort Worth 1997, no pet.). Therefore, to the extent Brown's request

---

[2] Henceforth, the term "section" refers to a section of the Penal Code unless otherwise indicated.

for a self-defense instruction was premised on the perceived threat from an unidentified shooter, he was not entitled to such an instruction with respect to the shooting of Johnson who, under these circumstances, would be an innocent third party.

Brown's second point is overruled.

### Sufficiency of the Evidence

Brown contends in his seventh and eighth points respectively that the evidence is legally and factually insufficient to establish that he fired the fatal shot or to support the rejection of his self-defense claim under a hypothetically correct jury charge.

In reviewing a claim of legal insufficiency, we view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Sells v. State*, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003); *Witt v. State*, 237 S.W.3d 394, 396-97 (Tex. App.—Waco 2007, pet. ref'd).

In a factual insufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Witt*, 237 S.W.3d at 397.

Dmarcus Thurman testified that he saw Brown "literally shoot Chris Johnson point blank right to the back." Other witnesses testified that they saw Brown

brandishing a gun and heard gunshots as they ran or took cover. This constitutes legally sufficient evidence that Brown fired the fatal shot.

Regarding factual sufficiency, Brown testified that shots were fired by others at the premises. Investigators found shell casings from other weapons on the premises. Results of testing on the bullet removed from Johnson's body were not available at trial, so it was not shown to be a 9 millimeter bullet.

There was conflicting evidence about whether Brown fired the fatal shot. It was within the jury's province to resolve those conflicts. *Dudzik v. State*, 276 S.W.3d 554, 559 (Tex. App.—Waco 2008, pet. ref'd). By returning a verdict of guilty, the jury necessarily resolved those conflicts in favor of the State. Giving due deference to the jury's role as the factfinder, we will not disturb its finding. *See id.* Accordingly, we find that the evidence was factually sufficient to support a finding that Brown fired the fatal shot.

With regard to self-defense, we have already determined that Brown was not entitled to an instruction on self-defense.

Brown's seventh and eighth points are overruled.

**Photographs**

Brown contends in his sixth point that the court abused its discretion by admitting twelve autopsy photographs because the probative value of the photographs was substantially outweighed by the danger of unfair prejudice.

> [A] proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; (4) the proponent's need for the evidence. In the context of the admission

of photographs, we also consider the factors set out in *Narvaiz*. Those factors include the number of photographs, the size, whether they are in color or are black and white, whether they are gruesome, whether any bodies are clothed or naked, and whether the body has been altered by autopsy.

*Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004) (citing *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992); *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g)) (footnotes omitted). "The availability of other means of proof and the circumstances unique to each individual case must also be considered." *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).

The twelve photographs at issue are eight-by-ten color photographs admitted at trial as State's Exhibits 101 through 112. The first two depict where the bullet was lodged in Johnson's internal stomach wall. The remaining ten depict his intestines, his bladder, the inferior vena cava, the aorta, and the left iliac region. After Brown objected to their admission, the State explained that these photographs were necessary to depict the path the bullet traveled within Johnson's body and to counter Brown's anticipated argument that Johnson's death was due at least in part to his own intoxication.[3] Brown's counsel responded that he did not intend to challenge the autopsy findings. He took the medical examiner on voir dire and established that it would be possible to explain to the jury the bullet path and the damage done to Johnson's internal organs without using the photographs. The court overruled the objection.

---

[3] Brown's counsel mentioned in his opening statement that Johnson's "blood alcohol level was about three times the legal limit." During his cross-examination of the medical examiner, he elicited testimony that Johnson's blood-alcohol level was 0.22 grams per milliliter. The medical examiner explained that Johnson had an enlarged liver (hepatomegaly) most likely due to alcohol abuse, that this condition made him more susceptible to bleeding, and that this was a contributing factor to his death. However, Brown's counsel never disputed that the gunshot wound was the cause of death.

*Probative Value*

These photographs have at best limited probative value. *See Reese v. State*, 33 S.W.3d 238, 241-42 (Tex. Crim. App. 2000) ("For the sake of argument, we will assume that the probative value weighs in favor of the State."); *Kelley v. State*, 22 S.W.3d 642, 645 (Tex. App.—Waco 2000, pet. ref'd) ("[W]e see very little probative value in photographs which depict the victim's condition after life-saving measures had been attempted. The amount of blood surrounding the body at the hospital and the manner in which miscellaneous medical equipment was used to save Ramirez have no tendency to prove or disprove whether Ramirez was shot (which was undisputed) or, more importantly, whether he was shot in self-defense.").

Brown did not dispute that Johnson died from a gunshot wound or the path the bullet traveled. Nor does Brown dispute that Johnson suffered "a large amount of blood loss" as the medical examiner stated. To the extent Brown's counsel suggested that Johnson may have survived absent his preexisting condition, the evidence is at best marginally relevant. This factor weighs only slightly in favor of admissibility.

*Ability to Impress Jury in Irrational Manner*

The nature of the photographs themselves is relevant to this issue. *See Erazo*, 144 S.W.3d at 494-95; *Reese*, 33 S.W.3d at 242. The twelve photographs are highly detailed color photographs. Each focuses on a particular aspect of Johnson's internal injuries. It is not difficult to conclude that these grisly depictions of Johnson's internal injuries had an emotional impact on the jurors and may have distracted them from the issues at hand. *Id.*; *see Kelley*, 22 S.W.3d at 645. This factor weighs strongly in favor of exclusion.

*Time Needed to Develop Evidence*

This factor weighs in favor of admissibility. The State did not devote an inordinate amount of the medical examiner's testimony to admit and discuss these photographs.

*The State's Need for This Evidence*

> There are three questions that the reviewing court should answer when addressing this factor: "Does the proponent have other available evidence to establish the fact of consequence that the [photograph] is relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute?"

*Erazo*, 144 S.W.3d at 495-96 (quoting *Montgomery*, 810 S.W.2d at 390).

The medical examiner's testimony (without these photographs) provided more than "[a]mple and adequate evidence" of the relevant issue, namely, the cause of death. *See Erazo*, 144 S.W.3d at 496. And Brown did not dispute the cause of death. This factor weighs in favor of exclusion.

*Summary*

Having considered the relevant factors, we hold that the probative value of these photographs was substantially outweighed by the danger of unfair prejudice. *See id.*; *Reese*, 33 S.W.3d at 242-43; *Kelley*, 22 S.W.3d at 645. Thus, the court abused its discretion by admitting them.

*Harm Analysis*

This is non-constitutional error, and we assess harm under Rule 44.2(b). *See* TEX. R. APP. P. 44.2(b); *Reese*, 33 S.W.3d at 243; *Kelley*, 22 S.W.3d at 645. Rule 44.2(b) requires reversal if the error affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. In assessing the likelihood that the jury's decision was adversely affected by the error, an appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire and whether the State emphasized the error.

*Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005) (footnotes omitted).

Here, we are not persuaded that the error in admitting these photographs affected Brown's substantial rights. Little attention was devoted to these exhibits after they were admitted in evidence. Brown focuses solely on the length of his sentence as indicating that he was harmed.[4] We disagree. The parties did not refer to the photographs during the punishment phase, which was fairly brief. The parties stipulated to Brown's prior convictions, and the State called two witnesses who testified about extraneous offenses Brown had been involved in. The punishment argument focused primarily on Brown's family situation, his upbringing, and his criminal activities both before and after Johnson's death.

Having considered the entire record, we hold that the erroneous admission of the photographs did not have a substantial and injurious effect or influence on the jury's verdict during either phase of trial. *See Petruccelli v. State*, 174 S.W.3d 761, 769 (Tex. App.—Waco 2005, pet. ref'd). Brown's sixth point is overruled.

---

[4]     We infer from this that Brown concedes that the erroneous admission of the photographs did not have a substantial affect on the jury's verdict of guilt. In any event, we have little difficulty concluding that their admission did not have "a substantial and injurious effect or influence" on the jury's verdict during the guilt-innocence phase.

## Excused Juror

Brown contends in his first point that the court abused its discretion by declaring a juror disabled and replacing him with an alternate juror on the second day of trial.

If "a juror dies or, as determined by the judge, becomes disabled from sitting" during a felony trial before the charge has been read to the jury, then the trial may proceed to verdict without that juror. TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp. 2009). A juror is considered "disabled" if he has a "physical illness, mental condition, or emotional state" which hinders his ability to perform his duties as a juror. *Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002) (quoting *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990)). A juror may also be considered "disabled" if he has "any condition that inhibits [him] from fully and fairly performing the functions of a juror." *Routier v. State*, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003) (quoting *Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000)). We review a trial court's determination that a juror is disabled under an abuse-of-discretion standard. *Id.*

Here, the court coordinator testified about the juror's situation. His wife had had surgery the night before and was due to be released in a day or two. He would be unable to serve as a juror because he was the only one available to care for her when she was released. Under questioning by Brown's counsel, the court coordinator testified that she did not know whether they had other family members in town or whether they had explored the possibility of hiring a nurse to provide in-home care.

Under similar circumstances, the San Antonio Court has held that a trial court did not abuse its discretion by excusing a juror whose husband became unexpectedly ill

the night of the first day of trial, was taken to the emergency room, and had to be returned to the hospital the next morning for additional tests. *See Quintanilla v. State*, 40 S.W.3d 576, 581 (Tex. App.—San Antonio 2001, pet. ref'd). However, *Quintanilla* is somewhat different because the defendant "agreed without objection" to the juror's being excused and the trial court had the opportunity to observe the juror's "attitude and demeanor and could reasonably have determined that [she] was too distracted by her husband's need for medical care to effectively perform her obligations as a juror." *Id.*

Courts have likewise found parents to be "disabled" for purposes of article 36.29 when they had children at home who would otherwise be unattended if they served. *See Owens v. State*, 202 S.W.3d 276, 277 (Tex. App.—Amarillo 2006, no pet.); *Wiley v. State*, No. 03-99-00047-CR, 2000 Tex. App. LEXIS 1565, at *43-45 (Tex. App.—Austin Mar. 9, 2000), *vacated on other grounds*, No. 732-00 (Tex. Crim. App. June 28, 2000) (not designated for publication); *Edwards v. State*, 981 S.W.2d 359, 367 (Tex. App.—Texarkana 1998, no pet.).

The situation facing this juror was no different. The information before the court was that his wife was hospitalized, would be released before the end of trial, and would require his care because no one else was available. We decline to require a trial court to explore the availability of home health services for this kind of situation as suggested by Brown's trial counsel. The court did not abuse its discretion by declaring this juror disabled.

Brown's first point is overruled.

## Lesser-Included Offense

Brown contends in his fourth point that the court erred by failing to instruct the jury on the lesser-included offense of criminally negligent homicide.

We use a two-part test to determine whether a defendant is entitled to such an instruction. "First, the lesser-included offense must be included within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser-included offense." *Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009).

The first part of the test is met because criminally-negligent homicide is a lesser-included offense of murder. *Pierce v. State*, 234 S.W.3d 265, 270 (Tex. App.—Waco 2007, pet. ref'd). However, there must also be evidence in the record that Brown was guilty of only this lesser offense. *See Young*, 283 S.W.3d at 875. The issue, then, is whether there is evidence that Brown failed to perceive the risk created by his conduct (*i.e.*, acted with criminal negligence). *See* TEX. PEN. CODE ANN. § 6.03(d) (Vernon 2003); *Jackson v. State*, 248 S.W.3d 369, 371 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Nguyen v. State*, 977 S.W.2d 450, 456 (Tex. App.—Austin 1998), *aff'd*, 1 S.W.3d 694 (Tex. Crim. App. 1999).

Brown testified that he kept his 9 millimeter handgun with him at all times for protection and had been carrying a gun since he was seventeen or eighteen. Chris Huckaby and he rode to the club together. In the club parking lot, Brown paid Chavez Webber $150 or $200 for some marihuana and let Webber hold his gun because he was interested in buying it. Webber walked away, and Brown asked him to return the gun.

Then Webber and Huckaby got into an argument about money Huckaby allegedly owed Webber for drugs. The two of them started fighting, and a crowd gathered. Brown joined the fray to help Huckaby. The victim Johnson momentarily broke up the fight.

Webber and Huckaby quickly resumed their argument, and Brown was trying to find his gun. They began fighting again, and, as Huckaby was "getting the best" of Webber, Johnson intervened. Brown testified that he was scared and confused at this moment because it was "basically [he] and Huckaby versus everybody else." A large crowd surrounded them, yelling and throwing bottles. Brown was on the ground at this point being "stomped or kicked" when he suddenly saw his gun on the ground. He grabbed the gun to protect himself. He shot it twice in the air "to get the crowd from up off of us, keep them from beating us up."

The crowd scattered and then "people just started shooting from everywhere." Brown focused on gunshots being fired from near a fence on the side of the club. He closed his eyes and fired one shot in that direction, believing that the crowd had gotten out of the way by then. He explained that he fired this shot to protect himself from whoever was shooting at him.

From Brown's own testimony, we conclude that no rational trier of fact would have been able to find that he failed to perceive the risk created by his conduct. Brown always carried a gun and so was familiar with the risk associated with its use. He brandished the gun in the midst of a heated fray. He intentionally fired it in the air for protection and to move the crowd away. He intentionally fired it toward the fence for

protection against the person shooting at him.  Under this record, the court did not err by refusing to charge the jury on the lesser-included offense of criminally negligent homicide.  *See Jackson*, 248 S.W.3d at 373; *Trujillo v. State*, 227 S.W.3d 164, 168-69 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Nguyen*, 977 S.W.2d at 457; *Johnson v. State*, 915 S.W.2d 653, 658 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

Brown's fourth point is overruled.

### Argument Regarding Self-Defense

Brown contends in his third point that the court erred by overruling his objection to the State's comment in closing argument that the judge had determined that self-defense did not apply in this case.

The prosecutor referred to the discussion of self-defense during voir dire, noted that the charge did not mention self-defense, and speaking about the charge stated:

> This is the law.  What was discussed in voir dire, what Mr. Barron told you in opening is not the law in this case.  The judge has made the determination on what the law is in this case.  Self-defense is not here because he was not justified in the actions that he took.

One of the acceptable areas of closing argument is responding to the argument of opposing counsel.  *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).  Even though the trial court refused Brown's request for an instruction on self-defense, his counsel still raised the issue in his argument—"So he gets the gun while he's on his knees.  Instead of firing into the crowd, which I assert under the law of self-defense he had a right to do.  .  .  .  He shoots twice in the air  .  .  .  ."

The court sustained the State's objection to this argument. Nevertheless, we cannot say that the court abused its discretion by permitting the State to discuss self-defense in its argument under these circumstances.

Brown's third point is overruled.

## Voluntary Intoxication

Brown contends in his fifth point that the court erred by instructing the jury in the charge that voluntary intoxication is no defense.

Section 8.04(a) provides, "Voluntary intoxication does not constitute a defense to the commission of crime." TEX. PEN. CODE ANN. § 8.04(a) (Vernon 2003). Subsection (d) of the same statute further provides, "For purposes of this section 'intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." *Id.* § 8.04(d) (Vernon 2003).

Emerson Ayers testified that Brown went into the club about 11:00 that night and came out around 2:30 or 3:00 in the morning. He said that Brown was "drunk" when he emerged from the club, that "he couldn't even walk straight," and Ayers could tell "he wasn't sober anymore" because of the way he was talking. Brown himself admitted to having some drinks.

> The evidence did not establish unequivocally that Appellant was intoxicated the day of the [homicide]. But there was sufficient evidence from which a juror could conclude that intoxication somehow excused Appellant's actions. By instructing the jury that voluntary intoxication does not constitute a defense to [homicide], the trial judge properly utilized the charge's function to actively prevent confusion. Therefore, the inclusion of the contested instruction did not constitute error.

*Sakil v. State*, 287 S.W.3d 23, 27-28 (Tex. Crim. App. 2009).

Brown's fifth point is overruled.

We affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
Justice Reyna, and
Justice Davis
(Chief Justice Gray concurs in the judgment only to the extent it affirms the trial court's judgment. He does not join the Court's opinion. A separate opinion will not issue.)
Affirmed
Opinion delivered and filed January 13, 2010
Do not publish
[CR25]