Joseph Lee BELT, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–06–00085–CR.

Court of Appeals of Texas,
Texarkana.

Submitted March 8, 2007.

Decided May 16, 2007.

Rehearing Overruled June 12, 2007.

Steven R. Miears, Bonham, for appellant.

Michael Morrow, Asst. County Atty., Richard Glaser, Fannin County Dist. Atty., Bonham, for appellee.

Before MORRISS, C.J., CARTER and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

Joseph Lee Belt was charged with three counts of aggravated sexual assault

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

of a child and two counts of indecency with a child. These counts charged that Belt (1) caused J.Y.'s anus to be penetrated by Belt's penis, (2) touched part of J.Y.'s anus, (3) exposed his penis in plain view of J.Y., (4) caused J.Y.'s anus to be penetrated by Belt's finger, and (5) caused J.Y.'s mouth to be penetrated by Belt's penis. Belt was tried by a jury. The trial court rendered an instructed verdict of not guilty as to count four. The jury found Belt guilty on all other counts and assessed his punishment at fifty years' confinement on count one, eleven years' confinement on count two, six years' confinement on count three, and twenty-five years' confinement on count five. The jury imposed a fine of $10,000.00 on each count.

In his appeal, Belt raises the following contentions: the evidence is legally and factually insufficient to support the jury's verdict on counts one and two; the trial court erred in allowing the complainant, J.Y., to testify by video while outside the physical presence of Belt and the jury; the trial court erred in allowing testimony by the witness Eddie Waggoner, a psychologist and professional counselor; the trial court erred in allowing evidence of extraneous bad acts by Belt; the violations charged against Belt were committed while Belt was a juvenile, so the trial court had no jurisdiction; and convictions on both counts one and two violate the Double Jeopardy Clause of the United States Constitution. We sustain the double jeopardy challenge and will reform the judgment to delete the conviction for count two. We will affirm the judgment as reformed.

The evidence, viewed most favorably to the State's case, showed that Belt took J.Y., who was nine years of age at the time, into a shed, told him to bend over and remove his pants, and penetrated J.Y.'s anus with his (Belt's) penis. There

was a .22 caliber rifle in the shed. Belt threatened to shoot J.Y. if he told anyone about the incident. On another occasion, Belt made J.Y. put Belt's penis in his mouth. Belt took the stand and in a general statement denied that he had ever committed the alleged assaults and indecencies.

■ In his first two issues, Belt argues that the evidence is legally and factually insufficient to prove he either penetrated J.Y.'s anus with his penis or touched any part of J.Y.'s anus. In support of his argument, Belt contends there is no evidence that he penetrated J.Y.'s anus at all, or if at all, with his penis. He also contends there is no evidence that he touched any part of J.Y.'s anus, only that he got behind J.Y. and caused him pain. We reject these contentions.

J.Y. testified at trial that Belt took him into a shed where there was a .22 caliber rifle leaning against the wall. He said Belt told him to pull down his pants and bend over. He said he then felt pain in his "backside," and the pain lasted several minutes at least. He also said Belt told him to keep his mouth shut or he would shoot him. J.Y. further said he was afraid of Belt, so he did not immediately tell anyone. Later, however, J.Y. made an outcry statement to a neighbor. The neighbor, Marty Loftice, said J.Y. told him Belt had put his mouth on J.Y.'s penis and asked him to do the same. He also told Loftice that Belt had lain on top of him without any clothes on and put his penis between J.Y.'s "butt." J.Y. was examined by physicians at the Northeast Medical Center in Bonham, and the report of the medical examination relates that J.Y., for the purposes of medical diagnosis, told the physicians, among other things, that Belt had "sexually abused him by forcing him to have oral & anal sex." J.Y. said his cousin (Belt) threatened to kill him if he

did not allow him to "put his pee-pee in my mouth and to put his pee-pee in my bottom, where I go poo poo." J.Y. also reported that he had anal pain when his cousin "put his penis in it" and he also had pain in his stomach while his "cousin put his penis in his anus."

Geri Lawson, a trained sexual assault nurse, examined J.Y. a few days after the sexual assault. She took an oral history from J.Y. in which he told her "Joey [Belt] put his pee pee in my bottom. It hurt. He made me put my mouth on his pee pee. We were at his house in the back shed." On cross-examination, Lawson was asked whether J.Y. had told her Belt had penetrated his anus. She answered, "Well, he was also [sic] 9–years–old, so I don't know how—how a 9–year–old could say how far it went in. But, yes, he put it in his anus. How far, I don't know." Lawson said her examination did not reveal any trauma or physical injury to J.Y. except some mild redness around and near J.Y.'s anus, but she also testified that a lack of physical trauma evidence was not uncommon in cases similar to this one, especially where there was a delay of three days or more between the assault and the examination, as in this case, and it did not mean J.Y. had not been sexually assaulted.

■ We find ample direct and circumstantial evidence legally and factually sufficient to support the jury's verdicts as to counts one and two. There is direct testimony that Belt "put his penis" in J.Y.'s anus. It is not necessary that the sexual assault complainant be able to testify as to penetration. Penetration may be proved by circumstantial evidence. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex.Crim.App. 1990); *Mosley v. State*, 141 S.W.3d 816 (Tex.App.-Texarkana 2004, pet. ref'd).

■ Belt also contends it was error for the trial court to allow J.Y. to testify from a room adjacent to the courtroom, with video of the testimony projected into the courtroom, with only the lawyers and the judge physically present with J.Y. in the room at the time he testified. The trial court allowed this procedure pursuant to Article 38.071, Section 3 of the Texas Code of Criminal Procedure, but Belt argues that the procedure violated his right to confront the witnesses against him as guaranteed by the United States Constitution, Amendment VI. *See* U.S. CONST. amend. VI; TEX.CODE CRIM. PROC. ANN. art. 38.071, § 3 (Vernon 2005).

■ The United States Constitution guarantees a criminal defendant the right to a face-to-face confrontation with the witnesses who appear before the trier of fact. *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). However, if the State makes an adequate showing of a necessity, the State's interest in protecting child witnesses is sufficiently important to allow the use of a special procedure that permits a child witness to testify without a face-to-face confrontation with the defendant. *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The finding of necessity is a case-specific one. The trial court must hear evidence and determine if the procedure is necessary to protect the welfare of the child witness and determine that the witness would be traumatized by the presence of the defendant. The distress that would be suffered by the child witness must be more than mere nervousness or excitement. *Id.* The decision is within the broad discretion of the trial court, and great deference should be given by the appellate court to the trial court's decision. *Marx v. State*, 987 S.W.2d 577, 583 (Tex.Crim.App.1999); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

We find that the trial court did not abuse its discretion in allowing a proce-

dure where J.Y. testified by video transmitted into the courtroom while he was in an adjoining room with only the lawyers, the judge, and another person of his choosing physically in the room with him. In a hearing on the admissibility of the outcry statement held outside the jury's presence, J.Y. was questioned. He became very emotional and belligerent. He refused to testify "before these people" in the courtroom. He repeatedly said he was getting light-headed and that he could not breathe. He said he only wanted to leave. He said he was not going to answer any more questions. In the video testimony, J.Y. was more composed and responded fully to the questions. Ample safeguards were in place to protect Belt's confrontation rights while protecting J.Y. from the trauma of testifying in Belt's presence. One of Belt's attorneys was present with J.Y. in the room while he testified on video, and one of them was in the courtroom. Attorneys for both sides were permitted to interrupt the testimony at any time they felt it was necessary, and full cross-examination was allowed. This procedure adequately protected Belt's confrontation rights while protecting J.Y. from undue trauma. We further conclude that the procedure was harmless to Belt beyond a reasonable doubt.

■ Belt also complains because the trial court allowed testimony by Waggoner, who testified about the characteristics and behavior patterns of sexual offenders and their victims. Belt argues that this testimony was without relevance and did not assist the jury in deciding the case. We find no error on the trial court's part in allowing testimony by Waggoner. As Belt himself concedes in his brief, Waggoner's testimony consisted only of general truisms that are common knowledge in our society. The testimony added nothing to the State's case, and was in no way preju-

dicial to Belt's case. No reversible error is shown.

■ Belt next contends the trial court erred in allowing the State to introduce evidence of extraneous "bad acts" during the State's case-in-chief. Belt's complaint refers to evidence by the State that Belt had sexual relations with a girlfriend, that Belt had pornographic magazines in the shed when the sexual assault on J.Y. occurred, and that Belt had a collection of various kinds of knives in his room and in the shed. Belt objected to evidence concerning these matters, not on the basis that its introduction violated the notice requirements of TEX.R. EVID. 404(b), but only on the ground it was irrelevant and prejudicial. See TEX.R. EVID. 403. The trial court sustained Belt's objection to the sexual act with Belt's girlfriend, but overruled it as to the pornographic magazines and the knives. The State first brought out this evidence during cross-examination of Belt. Later, Belt's grandmother testified about Belt's possession of pornographic magazines and knives, and Belt made no objection whatsoever to that testimony. Where evidence previously objected to is later introduced and there is no objection, no reversible error exists. McFarland v. State, 845 S.W.2d 824, 840 (Tex.Crim.App. 1992).

■ Belt also contends the trial court committed reversible error by allowing the State to present testimony by J.Y. that, on one occasion near the time when Belt assaulted him, he saw Belt having sexual relations with his (Belt's) underage sister in the woods near where Belt lived. Belt objected to this evidence on the grounds it was irrelevant and prejudicial. The State argues the evidence was admissible because it was similar to the charged offenses in that it showed Belt having sexual relations with an underage family member near the time the charged of-

**344**

fenses occurred, and tended to rebut Belt's defensive theory that family members had conspired to "frame" him for the sexual offenses against J.Y. We agree with the State's position. It is unlikely that the introduction of this evidence contributed to either Belt's convictions or punishments. The State did not emphasize this evidence either in its presentation of evidence or in jury argument, and the trial court gave a limiting instruction to the jury restricting its consideration.

In another issue, Belt argues that the trial court had no jurisdiction to try him for the charged offenses because the proof shows he was not an adult when some of the alleged offenses were committed. Belt bases his contention in this regard on his argument that the only evidence supporting his acts alleged in counts three and five (exposing his penis to J.Y. and causing his penis to penetrate J.Y.'s mouth) occurred when J.Y. was only five years of age and he (Belt) was only fourteen at that time. Belt concedes that the conduct charged in the other counts occurred, if it occurred at all, when Belt was seventeen years old.

We reject Belt's contention in this regard. As pointed out by the State, there is testimony from nurse Lawson that J.Y. initially reported he was forced to perform both oral sexual relations and anal intercourse with Belt in the shed. This conduct occurred when J.Y. was nine years old and Belt was over seventeen. If there is a conflict or an ambiguity in the evidence regarding this matter, the jury was permitted to resolve that conflict. Thus, there is evidence to show that Belt was an adult when all of the charged acts occurred.

■ The last issue raised by Belt is whether the convictions on both count one (causing J.Y.'s anus to be penetrated by Belt's penis), and count two (touching J.Y.'s anus), violate the United States Constitution's prohibition against double jeopardy.

■ When the same conduct violates different criminal statutes, the two offenses are the same for double jeopardy purposes if one of the offenses contains all the elements of the other. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Texas courts have held that a conviction for indecency with a child by contact (count two in our case) based on the same conduct for which the defendant was convicted of aggravated sexual assault of a child by penetration by the defendant's penis (count one in our case) constitutes multiple punishments in violation of the Fifth Amendment to the United States Constitution. *Patterson v. State*, 96 S.W.3d 427, 432 (Tex.App.-Austin 2002), *aff'd*, 152 S.W.3d 88 (Tex.Crim.App. 2004). As stated by the Texas Court of Criminal Appeals in its opinion affirming the Court of Appeals' judgment in *Patterson v. State*, "penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed." 152 S.W.3d at 92. Although the charge in our case did not require the jury to find a particular kind of contact with J.Y.'s anus to convict Belt on the indecency by contact count, there is no evidence that Belt touched part of J.Y.'s anus except by his penis. Thus, the offense of indecency with a child by touching J.Y.'s anus, of which the jury convicted Belt, was subsumed by the aggravated sexual assault by penile penetration conviction.

■ The double jeopardy provision does not prohibit multiple punishments if the Legislature has exhibited a clear intent to allow them for certain offenses. *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Texas courts have found no such clear

intent on the part of our Legislature for the offenses involved here. *Patterson v. State,* 152 S.W.3d at 92.

Belt did not raise a double jeopardy objection or claim at the trial, but a double jeopardy claim may be raised for the first time on appeal when the violation clearly appears on the face of the record, as it does here. *Gonzalez v. State,* 8 S.W.3d 640, 643 (Tex.Crim.App.2000).

Because the two convictions for aggravated sexual assault in count one and indecency with a child by contact in count two violate the double jeopardy prohibition, we will reform the judgment to delete the conviction for the offense carrying the less severe punishment, count two. *See Patterson v. State,* 96 S.W.3d at 433.

As reformed, the judgment below is affirmed in all respects.