

# NUMBER 13-05-007-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**AARON VEGA,**                                             **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

---

### On appeal from the 92nd District Court of
### Hidalgo County, Texas.

---

## MEMORANDUM OPINION ON REMAND

### Before Justice Yañez, Garza, and Vela
### Memorandum Opinion on Remand by Justice Yañez

This case is before us on remand from the Texas Court of Criminal Appeals.[1] A jury found appellant, Aaron Vega, guilty of the offenses of capital murder and aggravated robbery.[2] Vega was sentenced to life imprisonment for the capital murder charge and thirty

---

[1] *See Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008).

[2] *See* TEX. PENAL CODE ANN. § 19.03(a) (Vernon Supp. 2009), § 29.03(a)(1) (Vernon 2003).

years for the aggravated robbery charge. By three issues, Vega contends that: (1) the evidence was legally and factually insufficient to support his conviction of capital murder; (2) his conviction of aggravated robbery is barred by double jeopardy; and (3) he received ineffective assistance of counsel.

On original submission, this Court held that the evidence was factually insufficient to support Vega's conviction for capital murder as a party under section 7.02(a)(2) of the penal code; however, we did not determine whether the evidence was factually sufficient under section 7.02(b).[3] Upon the State's petition for discretionary review, the court of criminal appeals held that a hypothetically correct jury charge would have authorized the jury to convict Vega of capital murder as a party pursuant to section 7.02(a)(2) or section 7.02(b); therefore, it was error not to address whether the evidence was factually sufficient pursuant to section 7.02(b).[4] The court vacated our judgment and remanded the case for an analysis of the factual sufficiency of the evidence under section 7.02(b) and of Vega's two remaining issues if we found the evidence factually sufficient under that theory of liability.[5] We reform the judgment and affirm as reformed.

## I. RELEVANT FACTS

Vega was indicted and convicted of the murder of Ricardo Cantu. At trial, the State presented the testimony of, among others, Samuel Lopez, Emmanuel De Leon, and Sara Liñan.

Lopez testified that Cantu told him he wanted to buy thirty pounds of marihuana.

---

[3] *See Vega v. State*, 198 S.W.3d 819, 826 (Tex. App.–Corpus Christi 1997), *vacated and remanded by Vega*, S.W.2d at 916; *see also* TEX. PENAL CODE ANN. § 7.02(a)(2), (b) (Vernon 2003).

[4] *Vega*, 267 S.W.2d at 916.

[5] *Id.*

2

Lopez told Salvador Salas what Cantu said, and they went to Vega's house. Lopez stated that while at Vega's house, he heard Vega say that he wanted to rob Cantu. De Leon testified that earlier that day, Vega told him about the "robbery that they were going to do" involving a "guy that had a lot of weed." De Leon testified that Vega asked him if he wanted to assist with the robbery and he agreed.[6] Vega informed De Leon that some men from Mexico would be arriving "and plan everything to steal the weed from the guy." De Leon stated that "he just told me they were professionals in these things."

According to De Leon, when Lopez and Salas arrived at Vega's house, Vega asked them if they wanted to participate in the robbery. When the men from Mexico arrived at Vega's house, Lopez heard Vega tell them that he wanted to rob Cantu. Lopez testified that then a "little black car got there" and "[t]hey opened the trunk and pulled out some guns," and "passed them out." However, Lopez was unaware of whether Vega received a gun. When the State asked Lopez, "[W]ho was the main one doing the planning to rob [Cantu]?", Lopez replied, "Aaron Vega."

De Leon stated that Vega, the men from Mexico, and Salas finalized the plan. He testified that "[t]hey were going to rob this man. They were going to rob some weed from him." De Leon testified that Salas and the Mexican men "went to rob the guy." De Leon stated that he believed that each man had a gun. According to De Leon, the men returned approximately fifteen minutes later, talked to Vega, and then the Mexican men left. Vega informed De Leon that "the man" was killed, and Salas, Vega, and De Leon drove by the crime scene. De Leon testified that Salas recounted the shooting, stating that when they arrived at the scene they pointed their guns at Cantu, who was sitting in his car. Salas told

_____

[6] De Leon claimed that he was not at the scene when Cantu was killed.

3

De Leon that Cantu said that he was not scared, was not going to give them anything, and attempted to drive away. The men allegedly then began shooting at Cantu. Salas told De Leon that when he saw the "action," he also began shooting his gun.

De Leon testified that he, Salas, and Vega took the guns to Liñan's house "[t]o hide them there so that nobody could find them there." Lopez stated that a few days after the shooting he spoke to Vega. Lopez testified as follows:

[The State]: [W]hen you went to pick up [Vega] at his girlfriend [Liñan's] house, what did you-all talk about?

[Lopez]: I just asked him who had shot him.

[The State]: And what did he tell you?

[Lopez]: That those guys were professionals, that that's what they did for a living.

[The State]: What guys.

[Lopez]: The Mexicans.

During her testimony Liñan admitted that she told police that she heard Vega tell Salas that "they were just supposed to scare the guy, not kill him." Liñan recanted her statement to police and denied telling police that: Vega told her that they were going to rob a man named "Rick"; Vega brought the guns to her house; Vega left her house with the guns; Vega told her that he "got rid of the guns and gave them back to the guys"; and when she asked Vega what they planned to do with the guns, Vega told her that "they would probably use them again." However, Liñan agreed that these statements were included in her signed written statement to police.[7]

_____

[7] The jury was instructed that Liñan's testimony regarding her statement was admitted for the purpose of impeaching her, and that, if she was impeached, the statement could not be considered as evidence of Vega's guilt.

4

## II. FACTUAL SUFFICIENCY OF THE EVIDENCE[8]

By his first issue, appellant contends that the evidence is factually insufficient to support his conviction of capital murder under the law of parties pursuant to section 7.02(b) of the penal code. Specifically, Vega argues that the evidence supporting his guilt is "greatly outweighed" by the following: (1) "the evidence that the conspiracy to rob never contemplated murder"; (2) he was not present when Cantu was shot; (3) no evidence exists that he anticipated the murder; and (4) the spontaneity of the killing outweighs any evidence of guilt.

### A. Standard of Review and Applicable Law

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[9] This Court will not reverse the jury's verdict unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict.[10]

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which

---

[8] In our original opinion, we found that the evidence showed that "Vega put a plan in place to rob Cantu of mari[h]uana. He was present when the assailants met at his residence and armed themselves for purposes of perpetrating a robbery against Cantu," who was "ultimately shot and killed." *Vega v. State*, 198 S.W.3d at 826. We concluded that "the jury could have rationally inferred from the evidence that Vega intended to promote or assist in the murder of Cantu when he did nothing to stop the assailants from arming themselves, thereby rejecting the defense theory that he intended solely a robbery." *Id.* at 825. We concluded that the evidence was legally sufficient to support Vega's conviction of capital murder under section 7.02(a)(2). *Id.*

[9] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[10] *Id.* at 417.

5

he is criminally responsible, or by both."[11]  A party is criminally responsible for the conduct of another "[i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."[12]  A "person commits criminal conspiracy if, with intent that a felony be committed:  (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and (2) he or one or more of them performs an overt act in pursuance of the agreement."[13]

A person may be found guilty of capital murder under the law of parties.[14]  A person commits capital murder if he or she intentionally or knowingly causes the death of an individual while in the course of committing or attempting to commit, among other things, robbery.[15]  "In determining whether a defendant participated in an offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense."[16]  Furthermore, "[c]ircumstantial evidence may be used to prove one is a party to an offense."[17]

---

[11]  T EX. PENAL CODE ANN. § 7.01(a) (Vernon 2003).

[12] *Id.* § 7.02(b).

[13] *Id.* § 15.02(a) (Vernon 2003).

[14] *Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992) (en banc).

[15]  T EX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003), § 19.03(a)(2).

[16] *Frank v. State*, 183 S.W.3d 63, 73 (Tex. App.–Fort Worth 2005, pet. ref'd).

[17] *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).

**B. Analysis**

First, section 7.02(b) does not require the State to prove that Vega contemplated the murder. The State had to provide evidence that: (1) Vega and the co-conspirators engaged in an attempt to carry out a conspiracy to commit robbery; (2) in that attempt, the co-conspirators committed murder; (3) the murder was committed in furtherance of the robbery; and (4) the murder was an offense that should have been anticipated as a result of carrying out the robbery.[18] Next, a defendant need not have been physically present in order to be held criminally responsible as a party to murder under section 7.02(b).[19]

Finally, the State presented evidence that when Salas, De Leon, and the Mexican men arrived at his house, Vega asked them to assist him with robbing Cantu. There was evidence presented that Vega was the person who planned the robbery and asked "professionals" to assist with the robbery. When asked who killed Cantu, Vega stated that the "professionals" committed the murder and "that that's what they did for a living." There was evidence that Vega was present when the men acquired the guns and then hid them, supporting an inference that Vega knew that the men were armed when they committed

---

[18] *See* Tex. Penal Code Ann. § 7.02(b).

[19] *See Longoria v. State*, 154 S.W.3d 747, 755 n.6 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd) (concluding that "a defendant [accused of capital murder] need not have been physically present in order to be held responsible as a party, either under section 7.02(a)(2) . . . or under section 7.02(b)") (citing *Otto v. State*, 95 S.W.3d 282, 284-85 (Tex. Crim. App. 2003) (affirming conviction as a party under section 7.02(a)(2), even though defendant not present at scene of crime); *Cienfuegos v. State*, 113 S.W.3d 481, 489-90 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd) (affirming capital murder conviction based on section 7.02(b) even though defendant was not present at scene of the crime); *Hernandez v. State*, 52 S.W.3d 268, 278-79 (Tex. App.–Corpus Christi 2001, no pet.) (holding that presence at the scene is not required under section 7.02(a)(2)); *Pike v. State*, 758 S.W.2d 357, 362 (Tex. App.–Waco 1988) (holding defendant's absence at the scene of the crime did not absolve him of criminal liability under section 7.02(b)), *vacated on other grounds*, 772 S.W.2d 130 (Tex. Crim. App. 1989); *see also Lewis v. State*, No. 14-98-01348-CR, 2001 Tex. App. LEXIS 656, at *13 (Tex. App.–Houston [14th Dist.] Feb. 1, 2001, no pet.) (not designated for publication) ("A defendant may be held criminally responsible even if he was not present during the offense.") (citing *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985); *Webber v. State*, 757 S.W.2d 51, 55-56 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd)).

or attempted to commit the robbery.

Thus, the evidence showed that Vega conspired with the men to commit robbery, he was present when the men acquired guns for the robbery, during the course of the robbery, Cantu was shot and killed, and the men shot Cantu when he attempted to drive away. Based on Vega's knowledge that the men had guns when they went to commit the robbery, the jury could have reasonably inferred[20] that Vega anticipated or should have anticipated that the murder would occur as a result of the robbery.[21] Viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[22] Therefore, the evidence was factually sufficient to support appellant's conviction of capital murder as a party under section 7.02(b) of the penal code. We overrule appellant's first issue.

### III. DOUBLE JEOPARDY

By his second issue, Vega contends that double jeopardy bars the aggravated robbery conviction. The State concedes that Vega's convictions for both offenses of murder and aggravated robbery are barred by the doctrine of double jeopardy because aggravated robbery is a lesser-included offense of capital murder.

---

[20] *See Benavides v. State*, 763 S.W.2d 587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref'd) ("The factfinder, however, may draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime.").

[21] *Longoria*, 154 S.W.3d at 756 (concluding that the appellant who conspired with others to commit robbery should have anticipated that murder could occur where the appellant provided a handgun for the robbery); *Williams v. State*, 974 S.W.2d 324, 330 (Tex. App.–San Antonio 1998, pet. ref'd) (concluding that the evidence was factually sufficient to support a finding that a murder committed in course of pawn shop robbery was foreseeable to the appellant where evidence showed at least one of five conspirators arrived at scene armed with a gun and the jury could have inferred the appellant had knowledge that the co-conspirator had a gun).

[22] *See Watson*, 204 S.W.3d at 414-15.

8

**A. Preservation**

Vega failed to raise any double jeopardy objections before the charges against him were submitted to the jury. However, a double jeopardy claim may be raised for the first time on appeal when the undisputed facts show that a double jeopardy violation is clearly apparent on the face of the record and when enforcement of the usual rules of procedural default serve no legitimate state interest.[23] In the present case, Vega was tried on one count of capital murder and one count of aggravated robbery in the same proceeding. Aggravated robbery has been found to be a lesser-included offense of capital murder.[24] Therefore, the undisputed facts show that a double jeopardy violation is clearly apparent on the face of this record. Moreover, no legitimate state interest will be served by enforcement of the usual rules of procedural default because, even if we find that a double jeopardy violation occurred, a retrial will not be required.[25] We therefore review the record to determine if a double jeopardy violation occurred.

**B. Analysis**

In a two-count indictment, Vega was charged with capital murder and aggravated robbery. The indictment alleged that Vega committed capital murder by "intentionally caus[ing] the death of an individual, namely, Ricardo Cantu, by shooting the victim with a

---

[23] *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (en banc); *Saldana v. State*, 287 S.W.3d 43, 56 (Tex. App.–Corpus Christi 2008, pet. ref'd).

[24] *See Quintanilla v. State*, 40 S.W.3d 576, 579 (Tex. App.–San Antonio 2001, pet. ref'd) ("A review of the statutory elements of the offenses with which Quintanilla was charged reveals that aggravated robbery is a lesser included offense of capital murder, and thus the two offenses are the same for double jeopardy purposes."); *Queen v. State*, 940 S.W.2d 781, 784-85 (Tex. App.–Austin 1997, pet. ref'd) (stating that "every element of the alleged aggravated robbery with serious bodily injury, including death, was included within the alleged capital murder in the course of robbery, and it was impossible for the State to prove the latter offense without also proving the former").

[25] *See Saldana*, 287 S.W.3d at 56 (noting that if there was an actual double jeopardy violation, the "conviction would merely be reformed to delete the duplicated punishment").

firearm, and the defendant [Vega] was then and there in the course of committing or attempting to commit the offense of Robbery of Ricardo Cantu."[26] The indictment further alleged that Vega committed aggravated robbery by "then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally and knowingly cause[d] serious bodily injury to Ricardo Cantu by shooting the victim with a firearm."

To convict Vega of capital murder as charged in the indictment, the State had to prove all of the elements of aggravated robbery.[27] "When the same conduct violates different criminal statutes, the two offenses are the same for double jeopardy purposes if one of the offenses contains all the elements of the other."[28] Moreover, "greater inclusive and lesser included offenses are the same for jeopardy purposes."[29] Therefore, because all of the elements of aggravated robbery were included within the capital murder charge as alleged in the indictment, we presume that the two offenses were the same for double jeopardy purposes.[30]

Therefore, we conclude that Vega's conviction and punishment for both capital

---

[26] A person commits the offense of robbery if in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury. TEX. PENAL CODE ANN. § 29.02(a) (Vernon 2003).

[27] See Quintanilla, 40 S.W.3d at 579; Queen, 940 S.W.2d at 784-85.

[28] Saldana, 287 S.W.3d at 57 (citing Belt v. State, 227 S.W.3d 339, 344 (Tex. App.–Texarkana 2007, no pet.)).

[29] Id. (citing Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994)).

[30] See Quintanilla, 40 S.W.3d at 579 ("[I]f all the elements of one statutory offense are contained within the other, it is presumed that the two offenses are the same and that the Legislature did not intend to authorize punishment for both.") (citing Whalen v. United States, 445 U.S. 684, 693-94 (1980)); Queen, 940 S.W.2d at 785-86 (stating that because all elements of aggravated robbery were included within capital murder as the two offenses were alleged in the indictment, it is presumed that the two offenses were the same for double jeopardy purposes).

murder and aggravated robbery violated the multiple punishment component of the Fifth Amendment's double jeopardy clause.[31] We sustain Vega's second issue. The proper remedy in the case of a double jeopardy violation is to reform the judgment by vacating the lesser conviction and sentence.[32] Accordingly, we reform the judgment to delete the conviction for the offense carrying the less severe punishment, which in this case is the conviction for aggravated robbery.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, Vega contends that trial counsel rendered ineffective assistance by eliciting unfavorable evidence and by failing to object to the jury charge and indictment.

## A. Standard of Review and Applicable Law

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*.[33] The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness.[34] Assuming appellant has demonstrated deficient assistance, he must then show that there is a reasonable probability that, but for counsel's errors, the result would have been different.[35] In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and

---

[31] *See Queen*, 940 S.W.2d at 785-86.

[32] *See Saldana*, 287 S.W.3d at 58.

[33] *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[34] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687.

[35] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.

11

avoid the deleterious effects of hindsight."[36]

The burden is on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence.[37] Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy.[38] A reviewing court will not second-guess legitimate tactical decisions made by trial counsel.[39] Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions.[40] Furthermore, an allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[41]

## B. Analysis

First, Vega argues that defense counsel's use of the word "pistoleros" to describe the Mexican men was prejudicial and bolstered the State's theories of prosecution. Although Vega states that the word "pistoleros" literally means "gun totter [sic]" or "gun

---

[36] *Thompson*, 9 S.W.3d at 813.

[37] *Id.*

[38] *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).

[39] *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'").

[40] *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851.

[41] *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient") (internal quotations omitted).

carrier," without citation to authority, he claims that the "word is emotionally charged and often connotes [that] a 'pistolero' is a 'hitman' or assassin." The State counters that trial counsel may have been attempting to "sway the jury into believing that [Vega] had not intended to kill Cantu, and did not anticipate the murder."

The record in this case is silent regarding trial counsel's reason for describing the men as "pistoleros," and we cannot speculate as to trial counsel's motives. Moreover, there was evidence presented that Vega stated that the Mexican men were "professionals" and when asked who killed Cantu, Vega reiterated that the Mexican men were professionals and "that that's what they did for a living." The jury also heard evidence that the Mexican men had guns. Therefore, because there was other evidence that could have implied that the Mexican men were "hitmen" or assassins, Vega has not met his burden of showing that there is a reasonable probability that, but for counsel's alleged error, the result would have been different.[42]

Next, Vega argues that trial counsel "continued to bolster the State's case" during cross-examination of Oscar Treviño, an investigator.[43] Specifically, Vega complains that trial counsel asked questions implying that Liñan was an accessory to the crime and that Liñan's actions, as recited by his trial counsel, "paralleled" his own conduct in this case.

Liñan gave two separate statements to police. At trial, Liñan denied that in her second statement she told police that she allowed Vega to hide guns in her bedroom.[44]

---

[42] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.

[43] We note that the jury was instructed that any testimony by Officer Treviño concerning Liñan's statement to police was admitted for the purpose of impeaching Liñan and that if the jury found that the testimony did impeach Liñan, it could not consider the impeachment testimony as evidence of Vega's guilt.

[44] Liñan recanted her second statement to police.

13

We do not agree that defense counsel stated or implied that Liñan could be arrested for her alleged part in assisting in hiding the guns. Defense counsel clearly stated that it was Officer Treviño's theory that Liñan assisted with hiding the guns and then asked whether Officer Treviño charged Liñan with a crime. Based on our review of the totality of defense counsel's cross-examination of Officer Treviño, it appears that defense counsel attempted: (1) to discredit Officer Treviño's testimony by implying that Officer Treviño did not believe Liñan's second statement because he never charged her with an offense, even though she allegedly told him that she allowed Vega to hide the guns in her bedroom; and (2) to show that Liñan's second statement to police incriminating Vega was false. Because a proper trial strategy may consist of cross-examination that attempts to discredit a witness by pointing out inconsistencies,[45] we cannot conclude that defense counsel's cross-examination of Officer Treviño fell below an objective standard of reasonableness.[46] Finally, the record is silent concerning trial counsel's motives for asking the complained-of questions, and this is not one of those rare cases in which the record shows that the questions could not have been part of any plausible strategy. We conclude that appellant has not made the required showing that trial counsel was deficient in his cross-examination of Officer Treviño.[47]

Vega next complains that defense counsel was deficient because he failed to object to the absence of an application paragraph applying the "conspiracy theory of party liability

---

[45] *See Josey v. State*, 97 S.W.3d 687, 696 (Tex. App–Texarkana 2003, no pet.); *see also Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005) (en banc) (providing that "cross-examination is an art, not a science, and it cannot be adequately judged in hindsight").

[46] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687.

[47] *See Thompson*, 9 S.W.3d at 813.

codified in Texas [Penal] Code [section] 7.02(b)" in the capital murder count. Vega argues that the omission of the application paragraph "focused the jury entirely upon 7.02(a)(2)['s] manner of party liability without the opportunity for the jury to focus on 7.02(b)['s] theory of party liability." The record is silent regarding defense counsel's motives for not objecting to the jury charge on that basis. However, it may have been defense counsel's trial strategy to focus the jury only on section 7.02(a)(2) and not section 7.02(b).[48] Therefore, Vega has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy.[49] Furthermore, Vega has not shown that but for counsel's failure to object to the jury charge, the result would have been different.[50]

Finally, Vega argues that trial counsel was ineffective by not filing "a pretrial motions [sic] objecting on double jeopardy grounds or object[ing] to the jury charge authorizing conviction for both" the aggravated robbery and the capital murder charges. Again, the record is silent on trial counsel's reasons for not objecting on the basis of double jeopardy. Trial counsel may have decided not to object for strategic reasons.[51] We conclude that appellant failed to rebut the presumption that counsel acted reasonably.[52] We overrule Vega's third issue.

---

[48] This Court has previously determined the evidence was factually insufficient to support appellant's conviction under section 7.02(a)(2) and factually sufficient under section 7.02(b).

[49] *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851.

[50] *See Thompson*, 9 S.W.3d at 812; *see also Strickland*, 466 U.S. at 694.

[51] The State argues that trial counsel's "best defensive theory was trying to convince the jury that [Vega] was not criminally liable for the capital murder" and that it was "to [Vega's] advantage to have the jury charged on both offenses, in the hope that the jury would find [Vega] guilty only on the aggravated robbery charge, and acquit him of the capital murder charge that carried an automatic life sentence."

[52] *See Thompson*, 9 S.W.3d at 814.

## V. CONCLUSION

Because Vega's convictions for both capital murder and aggravated robbery violated his constitutional guarantee against double jeopardy, we reform the judgment to delete the conviction for the offense carrying the less severe punishment, which in this case is the conviction for aggravated robbery.[53] We affirm the trial court's judgment as reformed.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of July, 2010

---

[53] *See Saldana*, 287 S.W.3d at 58.