

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00019-CR

---

RANDALL GREENOUGH, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 402nd District Court
Wood County, Texas
Trial Court No. 22,719-2015

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After being charged in six separate indictments, Randall Greenough was convicted by a jury of four counts of aggravated sexual assault of a child and two counts of indecency with a child by sexual contact.[1] Each offense was enhanced by a prior felony conviction. After the jury returned its verdicts, it assessed Greenough's punishment as ninety-nine years in prison and a fine of $10,000.00 as to each conviction. The trial court ordered Greenough's sentences to run consecutively. Greenough appeals, claiming (1) he was subjected to double jeopardy when the jury returned multiple guilty verdicts on offenses that stemmed from the same act, and (2) the State's argument was egregious and the trial court's instruction to disregard its comments did not cure the alleged defect.[2] For the reasons below, we reverse the trial court's judgment of conviction for the offense of aggravated sexual assault in trial court cause number 22,719-2015.

---

[1]Greenough appeals six separate convictions in our cause numbers 06-18-00019-CR through 06-18-00024-CR. In this case, the appeal of trial court cause number 22,719-2015, Greenough was convicted for the act of causing his mouth to contact the victim's genitals. Such foregoing conviction is reversed and an acquittal is rendered for the reasons set forth in this opinion. Greenough's convictions and sentences regarding the below-listed companion appeals are affirmed:

| Appeal Cause Number | Trial Court Cause Number | Act Supporting Conviction |
| --- | --- | --- |
| 06-18-00020-CR | 22,720-2015 | penile-vaginal penetration |
| 06-18-00021-CR | 22,721-2015 | digital-vaginal penetration |
| 06-18-00022-CR | 23,424-2017 | lingual-vaginal penetration |
| 06-18-00023-CR | 23,425-2017 | hand-breast contact |
| 06-18-00024-CR | 23,426-2017 | penile-hand contact |

[2]In this case, we need not address Greenough's second point of error because reversal is appropriate based on Greenbough's first point of error.

## I.     Background

At the time of trial, Ginny was sixteen years of age.[3]  She explained that she was not attending school and that the last grade she had completed had been the eighth grade.  In July 2015, which was the summer prior to what would have been Ginny's freshman year in high school, Ginny lived with her mother and "mainly hung out with family," most notably, her grandmother.  On the evening of the alleged incident, Ginny was spending the night with her grandmother.  Because her grandmother had gone to bed, Ginny went across the street around midnight to visit her great aunt.

According to Ginny, after arriving at her great aunt's house, she "was met by Randall Greenough who informed her that [her aunt] was asleep."  Because Ginny was familiar with Greenough, she sat down beside him on a car.  Ginny stated that at that point, Greenough "pull[ed] out a glass pipe and beg[an] to smoke it . . . right next to [her]."  After smoking the pipe, Greenough began rubbing Ginny's "shoulder and mess[ing] with [her] hair, telling [her she was] pretty in the moonlight."  Ginny said she attempted to walk away, but Greenough got in front of her and told her to stay.  It was then that Greenough pushed Ginny back onto the hood of the car.  Ginny stated, "He then moved my shorts and panties to the side and inserted his fingers into my vagina."  She continued, "He was moving [his fingers] in and out."  Ginny said she began to cry and that she felt "[v]ery uncomfortable" and very scared.  When asked what happened next, Ginny explained, "He then bent down and proceeded to put his mouth on my clitoris.  Then put his tongue inside of my vagina."  Ginny said that Greenough placed his mouth on the outside of her vagina, prior to

---

[3]We refer to the child by a fictitious name in order to protect the child's privacy.  *See* TEX. R. APP. P. 9.10.

penetrating her vagina with his tongue. When asked how she knew Greenough had penetrated her vagina with his tongue, Ginny answered, "Because I could feel it. . . . It was moving around." Ginny stated that she quietly said, "Stop, please[,]" but that Greenough did "[a]bsolutely nothing" in response to her plea.

Ginny was then asked what happened next, to which she responded, "He then unbuttoned his pants and put his penis inside of my vagina. And as he was forcing intercourse, he was groping my breasts." Ginny explained that Greenough "groped" her breast with his hand and that she was wearing her shirt when he did so. According to Ginny, Greenough never made her remove her panties or shorts, but he moved them aside during the incident. When asked if Greenough ever made Ginny touch his penis, she stated, "[H]e stood next to the right side of the car and made me jerk him off." She stated that this particular contact lasted at least five minutes. Ginny said that after Greenough ejaculated next to the vehicle, he told Ginny to meet him the following day and that "he would have alcohol and marijuana." When asked what she said in response to Greenough's statement, Ginny said, "I -- I walked away." According to Ginny, she immediately returned to her grandmother's home where she "[c]ried [herself] to sleep." When asked how she felt, Ginny stated, "Very violated. Kind of felt ruined." The next morning, Ginny told her aunt, "Randall Greenough raped me."

During the punishment phase of the trial, Ginny testified that despite never having been diagnosed as HIV positive, she had been prescribed HIV preventative medication following the incident. Ginny stated that she was required to take three pills in the morning and two in the evening and that she had to continue taking the medication for three months. Ginny explained that

4

the medication had negative side-effects, stating, "I was very nauseous all the time. Constantly throwing up. Cold sweats. Wasn't able to sleep. It kind of made my entire body reject everything I ate, everything I drank. It made me weak. It made me feel like I wasn't a person anymore." Ginny said she had previously played on the volleyball team at school, but because the medicine made her ill, she missed several practices, which later resulted in her inability to be involved in the sport.

According to Ginny, her school mates labeled her "the girl with AIDS." Ginny stated, "[I]t ruined my social life. I didn't have anybody." Ginny said that despite having numerous friends prior to the incident, her former friends did not want to talk to her, and "[p]eople didn't even want to touch [her]." Ginny stated, "It made me feel worthless and everybody had turned against me. Like I was being punished for something I couldn't control."[4] Ginny went on to explain that she was unable to make any new friends.

Ginny also stated that after the assault, her "grades plummeted." As a result of her deteriorating grades, Ginny was required to attend "ISS," which she stated was a type of "punishment," and that she spent the "last three to four months sitting in a secluded room . . . ." Ginny eventually "drop[ped] out of school." Ginny also explained that whenever she saw an individual who reminded her of Greenough, she would have "really bad anxiety." She would bite her fingernails and would begin to shake. Ginny said she would become anxious around her father and uncle because they had similar features as Greenough. According to Ginny, her parent's marriage suffered after the incident and, as a result, Ginny entertained thoughts of suicide in an

---

[4]It was later determined that Greenough did not have HIV.

effort to mend the family. Ginny stated, "Maybe if I wasn't here, people would just forget that it ever happened. Hoping that everybody would forget it and not hurt." Ginny said that she had trouble sleeping because she had dreams and nightmares that "replay[ed]" the assault.[5]

Greenough chose to testify on his own behalf during the guilt/innocence phase of the trial.[6] Greenough commenced his testimony by acknowledging that he had been sentenced to prison on two prior occasions.[7] According to Greenough, he had met Ginny only once prior to the evening at issue. Around that same time, Greenough had been using Ginny's aunt's home to shower because, due to a recent storm, his own mobile home's power and water were out of commission. Greenough explained that after he would take a shower, he would hang his towel and rag outside on the dog kennel fence.

---

[5]In addition to Ginny's testimony during the punishment phase of the proceedings, Dr. Frederick Gary Mears explained that the incident at issue had affected every area of Ginny's life and that in his professional opinion, she had become a completely different person than she would have been had the incident not occurred. As for any potential long-term emotional effects, Mears stated that Ginny was "always going to live with this" for the remainder of her life. He also said that her family had been devastated and that there had been no "closure." Mears then explained "Beck's Depression Inventory," stating that it was a very reliable process to assess or quantify depression. In regard to Ginny, the assessment showed that "her depression was all encompassing, daily, and severe depression" and that her self-esteem had "plummeted." According to Mears, Ginny would "[a]bsolutely" need future psychotherapy as a result of the assault. He also explained that Ginny took medication for post-traumatic stress disorder and medication to combat her continued inability to get a good night's sleep.

In addition, Kyle Henson, who had been a sergeant investigator with the Wood County Sheriff's Office in 2013, explained the circumstances surrounding Greenough's prior conviction for the offense of theft of $1,500.00 or more, but less than $20,000.00. The victim of the alleged theft had been an elderly woman. Henson also testified that he was familiar with Greenough's reputation in the community and that it was his opinion that Greenough was "absolutely not a law-abiding citizen."

[6]Greenough did not testify during the punishment phase of the trial.

[7]Greenough stated that he been convicted of "[b]reaking and entering" and that he had been sentenced to eleven months in prison as a result of that conviction. In addition, Greenough stated that he had also been convicted of possession of a controlled substance and possession of stolen goods, for which he spent eighteen months in prison.

Despite the allegations against him, Greenough stated that he had not seen Ginny the evening of the alleged assault and that he had been in his mobile home around the time the incident was alleged to have occurred. According to Greenough, he did not commit any of the offenses of which he had been accused; repeatedly stating, "[T]hat did not happen." Greenough was asked to explain how his DNA was found on Ginny if he did not sexually assault her, to which he responded, "The only thing I can think of is there was a towel and a rag that was left on the dog kennel fence when I took a shower. When I returned there on a Friday morning at 7:00 o'clock to get that towel and rag, they were gone. They weren't there." Greenough also stated that the reason the allegations had been made against him was because "[t]he family [was] mad at [him]."

## II.  Discussion

Greenough was charged in four separate indictments with the offense of aggravated sexual assault of a child. He was also charged in two separate indictments for indecency with a child by sexual contact. All six of the offenses were alleged to have occurred on July 30, 2015.[8] On appeal,

---

[8]The indictments against Greenough also contained two enhancement paragraphs, which stated,

> And it is further presented in and to said Court that, prior to the commission of the aforesaid offense on the 18th day of November, 2013, in cause number 22,053-2013, in the 402nd Judicial District Court of Wood County, Texas, the defendant was convicted of the felony offense of Possession of Controlled Substance, Penalty Group 1, One Gram or More, Less than Four Grams;
> And it is further presented in and to said Court that, prior to the commission of the aforesaid offense on the 18th day of November, 2013, in cause number 22,055-2013, in the 402nd Judicial District Court of Wood County, Texas, the defendant was convicted of the felony offense of Theft, $1500 or More, Less than $20,000 (Elderly Individual),
> against the peace and dignity of the State.

After the jury returned the guilty verdicts, the court reconvened for the punishment phase of the trial. At that time, the State abandoned the 2013 drug offense against Greenough and proceeded on the theft charge as a means of enhancing all of the charged offenses to the punishment range of a first degree felony.

Greenough maintains that he was subjected to double jeopardy when the jury returned multiple guilty verdicts on offenses that stemmed from the same act.

Our founding fathers recognized that allowing the States to subject citizens to multiple trials for the same offense "would arm Government with a potent weapon of oppression." *Stephens v. State*, 806 S.W.2d 812, 816 (Tex. Crim. App. 1990) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1997)). Both the Fifth Amendment to the United States Constitution and Article I, Section 14, of the Texas Constitution prohibit double jeopardy and thereby protect individuals from being tried twice for the same offense, possibly receiving double punishments for the same act. *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Stephens*, 806 S.W.2d at 814–15. A multiple-punishments double-jeopardy claim can arise in two contexts. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). The first is in the lesser-included offense context, where the same conduct is punished twice, "once for the basic conduct, and [another] time for the same conduct plus more." *Id*. The second occurs in a circumstance where a defendant is punished for "the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once." *Id.*

"To decide if conviction on multiple counts stemming from a single criminal act is constitutionally permitted, we compare the elements of the two offenses to determine if each requires proof of an element that the other does not." *Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014). The *Aekins* court explained,

8

In sum, *Blockburger*[9] addresses two multiple-punishment issues: the "continuous action vs. separate and distinct acts" issue and the "one act violates separate distinct statutes" issue. But the Supreme Court has said that, for purposes of multiple-punishment analysis, the two *Blockburger* tests are just tools—not the be all, end all, of statutory construction. Sometimes two offenses that are the "same" *may* both be punished; sometimes two "different" offenses may *not* both [sic] be punished. It all depends on the legislature's intent.

*Id*. at 277 (citations omitted). Moreover, a "person who commits more than one discrete sexual assault against the same complainant may be convicted and punished for each separate act, *even if the acts were committed in close temporal proximity*." *Barnes v. State*, 165 S.W.3d 75, 87 (Tex. App.—Austin 2005, no pet.) (emphasis added) (citing *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999)).

By way of example, the *Aekins* court stated,

A double-jeopardy violation occurs if one is convicted or punished for two offenses that are the same both in law and in fact. Penetration without exposure is next to impossible. Penetration without contact is impossible. A single sexual act of penile penetration almost always consists of exposing the penis en route to contacting the vagina (or anus or mouth) with the penis, en route to penetration of the same with the penis. That one continuing act, the result of a single impulse, may violate three separate Penal Code provisions, but in *Patterson*, we held that the Legislature intended only one conviction for that one completed sexual assault.

*Aekins*, 447 S.W.3d at 279 (citation omitted). "In short, in Texas, as in many other jurisdictions, a defendant may not be convicted for a completed sexual assault by penetration and also for conduct (such as exposure or contact) that is demonstrably and inextricably part of that single sexual assault." *Id*. at 281.

---

[9]*Blockburger v. United States*, 284 U.S. 299 (1932).

9

In this case, Greenough contends that his conviction in trial court cause number 22,719-2015, in which he was charged with aggravated sexual assault of a child and wherein the State alleged that Greenough's mouth contacted Ginny's sexual organ, was subsumed by his conviction for aggravated sexual assault of a child in trial court cause number 23,424-2017.[10] In that case, the State alleged that Greenough's tongue penetrated Ginny's sexual organ. The State concedes error, and we agree.

In *Aekins*, the defendant was convicted of penetration by finger, penetration by mouth, and contact by mouth. The Texas Court of Criminal Appeals found that the offenses of contact by mouth and penetration by mouth were committed by a single criminal act and that the defendant could be punished only once for that act. *Aekins*, 447 S.W.3d at 282–83. Moreover, in *Belt v. State*, the defendant argued that his convictions for (1) penetrating the complainant's anus with his penis (aggravated sexual assault) and (2) touching the complainant's anus with his penis (indecency with a child) violated the prohibition against double jeopardy. *Belt v. State*, 227 S.W.3d 339, 344 (Tex. App.—Texarkana 2007, no pet.). The evidence used to convict the defendant for the "touching" conviction was the same as that relied upon for the "penetration" conviction. "Penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed." *Id*. (quoting *Patterson v. State*, 152 S.W.3d 88 (Tex. Crim. App. 2004)). This Court held, "[T]here is no evidence that Belt touched part of [the complainant]'s anus except by his penis." *Id*. Accordingly, we found that the defendant had been punished twice for the same conduct. *Id*. at 344–45.

---

[10]Greenough appeals from his conviction of aggravated sexual assault of a child in our cause number 06-18-00022-CR.

In this case, Ginny testified, "[Greenough] then bent down and proceeded to put his mouth on my clitoris. Then he put his tongue inside of my vagina." While these two events may have been separated by seconds, both acts were based on the same conduct. It would have been difficult, if not impossible, to determine when one act was completed or when the next one began. In other words, these two acts were "demonstrably and inextricably" a part of the same sexual assault. Thus, the jury could not have found two separate acts resulting from Greenough touching Ginny's sexual organ with his mouth, and Greenough penetrating Ginny's sexual organ with his tongue.

Accordingly, we sustain Greenough's point of error and vacate the judgment of conviction for aggravated sexual assault in trial court cause number 22,719-2015 because he was convicted of the same act in another cause of action.

## III. Conclusion

We reverse the trial court's judgment in trial court cause number 22,719-2015 and render a judgment of acquittal as it relates thereto.

Bailey C. Moseley
Justice

Date Submitted:     June 7, 2018
Date Decided:       July 13, 2018

Do Not Publish

11